Steven A. WOLFSON, Individually and as Personal Representative of the Estate of Sandra Wolfson, Deceased, Deborah Wolfson Tasdemiroglu, Sharon Wolfson Mulkin, and Jacob Benjamin Wolfson, Appellants,

v.

BIC CORPORATION, Appellee.

No. 01–01–00167–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 5, 2002.

John H. Thomisee, Simmons, Lawrence & Thomas, Houston, for Appellant.

Andrew T. McKinney, IV, McKinney & Cooper, Houston, for Appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

## OPINION

FRANK C. PRICE, Justice.

We must determine if summary judgment was properly granted in favor of appellee, BIC Corporation, in this combined wrongful death and survival action appealed by appellants, Steven A. Wolfson (individually and as personal representative of the estate of Sandra Lee Wolfson); Deborah Wolfson Tasdemiroglu, Sharon Wolfson Mulkin, and Jacob Benjamin Wolfson. Appellants alleged multiple causes of action including, strict products liability, misrepresentation, negligence, and violations of the Deceptive Trade

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Practices—Consumer Protection Act (DTPA). Appellants present three issues, asserting the trial court erred in granting summary judgment because (1) appellants' expert testimony was improperly excluded, (2) the evidence presented was sufficient to defeat BIC's traditional and no evidence motions for summary judgment, and (3) Steven Wolfson had standing to bring a survival action. We affirm.

## Background

Upon arriving home on the evening of September 21, 1993, Steven Wolfson found his wife, Sandra, lying dead on the kitchen floor. The cause of her death was later attributed to first-and second-degree burns covering over 70 percent of her body. Appellants alleged the decedent was engulfed in flames as she lit a cigarette with a defective butane lighter. Law enforcement and fire department personnel determined that, while she was on fire, the decedent had traveled throughout the house and into the back yard to sources of water in an attempt to extinguish herself. The decedent had been at home alone at the time of the incident.

Investigators recovered portions of a burned, mini-BIC lighter from the Wolfson's kitchen. Also recovered from the scene were matches, including a burned match discovered in the back yard, and several other lighters found in the living room. Although fire department personnel established the Wolfson's living room sofa as the area of the fire's origin, no conclusive determination was made regarding the ignition source of the fire.

## Procedural History

After filing its second amended answer, BIC filed a motion for summary judgment and a motion to exclude appellants' expert testimony and evidence. The trial court granted BIC's motion to exclude expert testimony and evidence and subsequently granted BIC's supplemental motion for summary judgment. The trial judge signed its final take-nothing judgment on November 10, 2000.

## Discussion

Summary judgment is proper only when a movant establishes there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four Corp.,* 888 S.W.2d 31, 34 (Tex.App.-Houston [1st Dist.] 1994, writ denied). "The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact." *Levesque v. Wilkens,* 57 S.W.3d 499, 503 (Tex.App.-Houston [14th Dist.] 2001, no pet.) (quoting *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952)). In reviewing a summary judgment, we must indulge every reasonable inference in favor of the non-movant and resolve any doubts in its favor. *Johnson,* 891 S.W.2d at 644; *Lawson,* 888 S.W.2d at 33. We take all evidence favorable to the non-movant as true. *Johnson,* 891 S.W.2d at 644.

A defendant is entitled to summary judgment if the evidence disproves, as a matter of law, at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.-Houston [1st Dist.] 1993, writ denied). After the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996).

**Expert Witness Testimony**

In issue one, appellants argue that the trial court abused its discretion by excluding the expert testimony of Dr. Geremia and Rippstein. Appellants designated Dr. Geremia and Rippstein to testify "on the subject of the [BIC] lighter's defect and the lighter's role in the death of Ms. Wolfson." BIC argues that (1) Dr. Geremia's testimony was properly excluded because it was speculative; (2) Rippstein was not qualified as an expert; and (3) Rippstein's testimony was properly excluded because it was speculative.

After a hearing on BIC's motion to exclude the appellants' expert testimony and evidence, the trial court made the following findings:

1. Dr. Geremia did not meet the reliability and relevance criteria of *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995) and its progeny. Specifically the theories and techniques used by Geremia were (1) not shown to be based on theories or techniques that could and were tested; (2) too dependent upon the subjective interpretation of the expert; (3) not, nor have they [theories and techniques] ever been, subjected to peer review; (4) not shown to have a known or potential rate of error that would, in turn, permit the court to determine the technique's reliability; (5) not shown to be generally accepted by the relevant scientific community; and (6) not shown to be used in non-judicial applications such as published treatises on fire investigation and accident reconstruction; and

2. Mr. Rippstein, having failed to qualify as having any meaningful level of knowledge in lighter design, accident reconstruction and further lacking any independent opinion on lighter design, product defect or accident reconstruc-

tion, failed to offer any opinions that would be material to this product liability action, and such opinions and testing as he did offer or perform also failed to meet the above criteria. Specifically, the testing methodology used by Mr. Rippstein was not reliable, did not follow any recognized scientific method or protocol and was completely undocumented. As such, the witnesses' proffered testimony is neither reliable nor relevant to this case.

Prior to examining the trial court's findings, we will review the relevant law applicable to expert testimony.

**Determining an Expert's Qualifications**

 Rule 702 of the Texas Rules of Evidence permits a witness qualified as an expert by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding the evidence or determining a fact issue. TEX.R. EVID. 702; *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 718 (Tex.1998). As a preliminary question, the trial court must assess whether an expert is qualified to testify on a given subject. *Gammill,* 972 S.W.2d at 718. The party offering the expert's testimony bears the burden to prove the witness is qualified under Rule 702. *Id.* "The offering party must demonstrate that the witness 'possess[es] special knowledge as to the very matter on which he proposes to give an opinion.'" *Id.* (quoting *Broders v. Heise,* 924 S.W.2d 148, 152–153 (Tex.1996)).

 We may not disturb the trial court's determination that the witness is or is not qualified as an expert unless an abuse of discretion is shown. *Id.* at 718–19. Consequently, we will not conclude the trial court has abused its discretion simply because, in the same circumstances,

we would have ruled differently, or if the trial court committed a mere error in judgment. *Hernandez v. State,* 53 S.W.3d 742, 750 (Tex.App.-Houston [1st Dist.] 2001, no pet). Instead, we are to gauge an abuse of discretion by determining whether the trial court acted without reference to any guiding rules or principles. *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995). Thus, a trial court enjoys wide latitude in determining whether expert testimony is admissible. *Hernandez,* 53 S.W.3d at 750.

### Determining the Relevance and Reliability of an Expert's Methodology

 The relevance requirement, which incorporates traditional relevancy analysis under Texas Rules of Evidence 401 and 402, is met if the expert testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Exxon Pipeline Co. v. Zwahr,* 45 Tex. Sup.Ct. J. 691, 694, 88 S.W.3d 623, 629 (2002) (quoting *Robinson,* 923 S.W.2d at 556). Evidence that has no relationship to any issue in the case does not satisfy rule 702 and is thus inadmissible under rule 702, as well as under rules 401 and 402. *Id.*

 When the reliability of an expert's testimony is challenged, the trial court must "gauge" the expert's reliability by ensuring "that the opinion comports with applicable professional standards outside the courtroom." *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001)

(quoting *Gammill,* 972 S.W.2d at 725–26). If expert testimony is not reliable, it is not evidence.[1] *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 721–29 (Tex.1997).

 In *Robinson,* the Texas Supreme Court identified six nonexclusive factors to determine whether an expert's testimony is reliable and thus admissible. *Wilkins,* 47 S.W.3d at 499. Those factors include, but are not limited to (1) the extent to which the theory has been or can be tested, (2) the extent to which the technique relies upon the subjective interpretation of the expert, (3) whether the theory has been subjected to peer review and publication, (4) the technique's potential rate of error, (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community, and (6) the non-judicial uses which have been made of the theory or technique. *Robinson,* 923 S.W.2d at 557.

 However, the court, in *Gammill,* recognized that the *Robinson* factors may not apply to certain testimony. *Gammill,* 972 S.W.2d at 726. In those cases, there still must be some foundation for the opinion offered to show its reliability. *Id.* If an expert relies upon unreliable foundational data, any opinion drawn from that data is likewise unreliable. *Havner,* 953 S.W.2d at 714. "Further, an expert's testimony is unreliable even when the underlying data is sound if the expert's methodology is flawed."[2] *Id.*

---

1. "In light of the increased use of expert witnesses and the likely prejudicial impact of their testimony, trial judges have a heightened responsibility to ensure that expert testimony shows some indicia of reliability." *Robinson,* 923 S.W.2d at 553. The role of the trial court is not to determine the truth or the falsity of the expert's opinion. *Id.* at 558. Instead, the trial court engages in the initial determination of whether an expert's opinion is relevant and

whether the methods and research upon which it is based are reliable. *Id.*

2. Other courts have likewise recognized that something is not so simply because "an expert says it is so." *Havner,* 953 S.W.2d at 712 (citing *Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 421 (5th Cir.1987)). When the expert "br[ings] to court little more than his credentials and a subjective opinion," this is not

Having set forth the relevant law regarding expert testimony, we now address appellants' first issue.

**Dr. Geremia's Testimony**

 Dr. Geremia has a bachelor's degree in chemical engineering from Columbia University and master's and doctorate degrees from George Washington University in mechanical engineering. Among his studies, Dr. Geremia has over 20 years' experience investigating fires caused by lighters. Because BIC did not object to Dr. Geremia's qualifications, we proceed to evaluate whether his principles, research, and methodology underlying his conclusions are relevant and reliable.

Appellants concede that Dr. Geremia was not asked to reconstruct the failed lighter, but to evaluate available data and form relevant opinions. Dr. Geremia concluded that the partially melted mini-BIC butane lighter experienced a "failure to extinguish" and exploded in the decedent's pocket. The failure to extinguish, Dr. Geremia asserted, was most likely caused by a design defect, such as an unsealed valve, that allowed debris to enter the valve during normal use.[3] Dr. Geremia testified that the size of the design defect gap was about one one-thousandth of an inch.

Dr. Geremia's conclusion was developed through a series of assumptions. First, he assumed that a post-manufacture piece of debris entered the lighter casing through a one-thousandth of an inch gap, and traveled in a downward direction coming to rest between the globe seal and track. The debris then caused the globe seal to remain open, allowing butane to escape and creating a "nearly invisible blue flame." Second, he assumed the decedent used the BIC lighter to light a cigarette. Upon lighting the cigarette, the decedent then placed the BIC lighter inside her blue jean pocket. According to Dr. Geremia, the small flame persisted inside the pocket and eventually melted the top of the mini-BIC lighter, causing it to rupture.

Third, Dr. Geremia assumed that, without being lit, liquid butane then passed through the flame that melted the top of the lighter. Once the butane dispersed between the decedent's clothes and her body, it ignited, resulting in the decedent's being consumed by flames.

We now turn to our analysis of Dr. Geremia's conclusion to determine whether the trial court abused its discretion by excluding his testimony. Applying the *Robinson* factors to Dr. Geremia's accident reconstruction, we conclude that he (1) has not observed, performed, or attempted to perform any test which may duplicate or verify a failure to extinguish in a mini-BIC lighter, (2) relies heavily on his own subjective assumptions that debris entering the lighter caused it to explode, (3) has neither published a work on the theory of failure to extinguish, nor is he aware of any such publication, (4) did not provide any evidence relating to the potential rate of error,[4] (5) offered no evidence whether the failure to extinguish theory has been

---

evidence that would support a judgment. *Id.* "The Fifth Circuit in *Viterbo* affirmed a summary judgment and the exclusion of expert testimony that was unreliable, holding that '[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.' " *Id.* (quoting *Viterbo*, 826 F.2d at 422).

**3.** According to Dr. Geremia, common causes for failure to extinguish include (1) debris in the valve under the globe seal or around the jet, and (2) a poorly crimped globe seal or a globe seal with no crimp at all. He stated, however, that debris is the most common cause for failure to extinguish.

**4.** Dr. Geremia did, however, testify that the failure rate of a mini-BIC lighter is on the order of one in millions.

generally accepted as valid by the relevant scientific community, and (6) he has not demonstrated the non-judicial uses which have been made of the theory.

Further, the court, in *Robinson,* warned experts to avoid coming to a firm conclusion first and then doing research to support those conclusions—this is the antithesis of the scientific method. *Robinson,* 923 S.W.2d at 559. With that warning in mind, we note the following testimony by Dr. Geremia:

> BIC's COUNSEL: Now, typically, in order to verify that there is debris on a globe seal that could prevent a lighter from failing to extinguish, what you would most like to have is the actual globe seal itself so that you could expect—inspect it under a microscope . . . correct?
>
> DR. GEREMIA: That is what I'd like to have and that is what I would normally do if I do have it [globe seal].
>
> BIC's COUNSEL: In this particular case, we don't have the globe seal, do we?
>
> DR. GEREMIA: That is correct.
>
> BIC's COUNSEL: In this particular case we don't have any of the lighter parts that you would normally prefer to have so that you could make a physical microscopic . . . inspection of the parts . . . correct?
>
> DR. GEREMIA: Well we don't have the globe seal inject, which are the *critical items* for that type of examination (emphasis added).

Because essential valve components were never recovered for examination, we hold that Dr. Geremia formed a conclusion and then based an opinion on his conclusion. Accordingly, we cannot conclude that the trial court abused its discretion by excluding Dr. Geremia's testimony.

 Having excluded the testimony of Dr. Geremia—the only testimony offered to establish causation—and assuming, without deciding, that (1) Rippstein was qualified to testify, and (2) Rippstein's testimony would be relevant, we hold that his [Rippstein's] testimony alone would not be sufficient to sustain appellants' cause of action. In support of our holding, we note the following testimony by Rippstein:

> BIC's COUNSEL: Now it's not your business and you're not here today to tell this Court why the lighter in question failed to extinguish.
>
> MR. RIPPSTEIN: No, I don't plan to do that.
>
> BIC's COUNSEL: Because you don't know why.
>
> MR. RIPPSTEIN: No, I do not.
>
> BIC's COUNSEL: You don't know whether it's a product defect or some internal contaminant to the lighter or anything like that, do you?
>
> MR. RIPPSTEIN: All I could say is I don't know why it failed.
>
> BIC's COUNSEL: So what is your purpose in this case?
>
> MR. RIPPSTEIN: To tell how the fire started and where it started.

After reviewing the entire record, we hold that Mr. Rippstein did not testify regarding causation, an essential element of appellants' causes of action, and the trial court properly excluded Dr. Geremia's testimony, the only offer of any proof of causation for any of appellants' causes of action. We overrule appellants' first issue, and thus conclude, that the trial court properly granted BIC's motion for summary judgment in the absence of any proof of causation. Therefore, we do not reach appellants' issues two or three.

## Conclusion

We affirm the trial court's judgment.