Opinion issued January 5, 2006



     











In The
Court of Appeals
For The
First District of Texas




NO. 01–05–00183–CV




HARRIS COUNTY APPRAISAL DISTRICT, Appellant

V.

(KEMPWOOD PLAZA LTD.) HARTMAN REIT OPERATING
PARTNERSHIP, L.P., Appellee




On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 1999-43970




O P I N I O N

          Appellee, Hartman Reit Operating Partnership, L.P. (Hartman), sued appellant,
Harris County Appraisal District (HCAD), to lower its ad valorem tax liability for tax
years 1999 through 2003 for its Kempwood Plaza LTD. (Kempwood) property. Prior
to the trial, HCAD filed a motion to exclude Gary Brown, Hartman’s expert appraisal
witness. The trial court denied HCAD’s motion. HCAD subsequently re-urged the
motion prior to Brown’s testimony, after Hartman closed, and—after the jury returned
a verdict in favor of Hartman—in a motion for judgment notwithstanding the verdict. 
Each time, the trial court denied the request. HCAD now appeals the judgment,
arguing in one point of error that it was error for the trial court to have admitted
Brown’s testimony.
          We affirm.
Background
          Kempwood is classified by HCAD under the land use code of 343 (a
neighborhood shopping center) and the building class of D (a property which has
“low rent, inferior maintenance, poor and unstable occupancy, poor signage, poor
design, no quality tenants, poor tenant mix, weak anchor tenant, or failure to attract
customer traffic”). The property is 112,072 square feet. To support its contention
that the Kempwood property was unequally appraised, Hartman hired Brown to
assess the appraised value of comparable properties. Brown’s research consisted
primarily of compiling data taken from HCAD’s website. Brown began by looking
for properties in the surrounding area with the land use code of 343 and the building
class of D. This produced a list of 24 properties. From that list, Brown restricted it
to properties between 60,000 and 200,000 square feet. This left Brown with nine
properties.
          Brown then made adjustments in value according to the properties’ location,
age, and size. For location, he made upward adjustments to a couple of properties
that he believed to be in inferior locations. For age, Brown made downward
adjustments on some of the newer properties. For size, Brown made downward
adjustments on some of the smaller properties.
          Brown finally calculated the median per-square-foot value of the properties for
each tax year, and applied those values to Kempwood. The final calculations showed
a significant disparity between Brown’s median value and the value assessed by
HCAD.
Admission of Expert Witness
          In its sole point of error, HCAD argues that the trial court erred in admitting
the testimony of Hartman’s expert witness, Gary Brown.
A.     Standard of Review
          We review a trial court’s ruling on a motion to exclude an expert witness under
an abuse of discretion standard. Gammill v. Jack Williams Chevrolet, Inc., 972
S.W.2d 713, 718–19 (Tex. 1998); Wolfson v. BIC Corp., 95 S.W.3d 527, 531 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). We will not reverse a trial court’s
judgment even if we would have held differently, or even if the trial court made a
mere error in judgment. Id. at 531–32. Instead, we only reverse if the trial court
acted without reference to any guiding rules or principles. Id. at 532. Thus, a trial
court enjoys wide latitude in determining whether expert testimony is admissible. Id. 
B.      Analysis
          In Gammill, our supreme court held that all expert testimony must be relevant
and reliable under Rule of Evidence 702. 972 S.W.2d at 727. Appraisal expertise is
a form of “specialized knowledge [used to] assist the trier of fact to determine a fact
in issue.” Guadalupe-Blanco River Auth. v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002)
(quoting Tex.R. Evid. 702). It is therefore subject to Gammill’s relevance and
reliability requirements. Id. The proponent of expert testimony must show that the
opinions are both relevant to the issues and based upon a reliable foundation. Id.; E.I.
du Pont de Nemours & Co., Inc. v. Robinson, 923 S.W.2d 549, 556 (Tex. 1995)
(adopting analysis of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589–90,
113 S. Ct. 2786, 2795 (1993)). The trial court must make the threshold determination
of whether the testimony meets both the relevancy and reliability standards for
admissibility under Rule 702. Robinson, 923 S.W.2d at 557.
          1.       Qualifications
          Although Rule 702 of the Texas Rules of Evidence requires a finding that the
witness is qualified to testify, we do not review that finding in this appeal. During
the trial, HCAD stipulated that Brown was qualified as a real estate appraiser. In its
brief, however, HCAD argues that it did not stipulate to Brown being qualified to
determine (1) what a reasonable number of properties was, (2) what qualified as a
comparable property, or (3) how to make appropriate adjustments. Regardless, this
is part of the work involved in making appraisals. If HCAD had not meant to
stipulate to Brown’s qualifications in these areas, it should have qualified its
stipulation at trial. See Hansen v. Academy Corp., 961 S.W.2d 329, 335 (Tex.
App.—Houston [1st Dist.] 1997, pet. denied) (enforcing stipulation because it was
clear and no qualification given to court). We hold this argument is waived.
          2.       Relevance
          The relevance requirement, which incorporates traditional relevancy analysis
under Rules of Evidence 401 and 402, is met if the expert testimony is “sufficiently
tied to the facts of the case that it will aid the jury in resolving a factual dispute.” 
Robinson, 923 S.W.2d at 556. Evidence that has no relationship to any issue in the
case does not satisfy rule 702 and is thus inadmissible under rule 702, as well as
under rules 401 and 402. Id. 
          The original suit was brought under the former subsection 42.26(d) of the
Texas Tax Code. Act of June 1, 1997, 75th Leg., R.S., ch. 1039, § 42, 1997 Tex.
Gen. Laws 3897, 3917 (amended 2003) (current version at Tex. Tax. Code
§ 42.26(a)(3) (Vernon Supp. 2005)).


 The former subsection 42.26(d) provided “[t]he
district court shall grant relief on the ground that a property is appraised unequally
if the appraised value of the property exceeds the median appraised value of a
reasonable number of comparable properties appropriately adjusted.” Id. Thus,
Brown’s job for the trial, at minimum, was to find a reasonable number of comparable
properties, make appropriate adjustments, and compare the median appraisal value
of those properties to the appraisal value applied to Kempwood. This is what he did.
          3.       Reliability
          This case turns, then, on whether Brown’s underlying data was reliable. When
the reliability of an expert’s testimony is challenged, the trial court must “gauge” the
expert’s reliability by ensuring “that the opinion comports with applicable
professional standards outside the courtroom.” Helena Chem. Co. v. Wilkins, 47
S.W.3d 486, 499 (Tex. 2001) (quoting Gammill, 972 S.W.2d at 725–26). In applying
this reliability standard, however, the trial court does not decide whether the expert’s
conclusions are correct; rather, the trial court determines whether the analysis used
to reach those conclusions is reliable. Gammill, 972 S.W.2d at 728. Expert testimony
is also unreliable if there is too great an analytical gap between the data upon which
the expert relies and the opinion offered. Id. at 727.
                    a.       Weingarten
          Both parties pay significant attention to Weingarten Realty Investors v. Harris
County Appraisal District, 93 S.W.3d 280 (Tex. App.—Houston [14th Dist.] 2002,
no pet.). The facts of Weingarten are very similar to this case. However, in that case,
the trial court granted HCAD’s motion to exclude the expert witness. Id. at 283. The
Fourteenth Court of Appeals affirmed, finding the following deficiencies in the
witness’s underlying data: (1) the compared properties were significantly smaller than
the Weingarten property; (2) nine of the ten compared properties had per-square-foot
appraised values significantly lower than the Weingarten property; (3) the expert only
compared ten properties, even though there were 191 retail centers in the same
quadrant as the Weingarten property; (4) the expert carved out portions of some of
the compared properties due to disparate ownership; (5) the adjustments made to the
compared properties were only for physical characteristics of conditions, age, size,
and location; and (6) the amount of adjustment for each characteristic of the
compared properties was subjective. Id. at 285–86.
          In formulating his analysis, Brown attempted to avoid the pitfalls of
Weingarten. Brown’s research consisted primarily of compiling data taken from
HCAD’s website. Brown began by looking for properties in the surrounding area
with land use code 343 and building class D.


 Properties under land use code 343 are
neighborhood shopping centers. Building class D applies to properties which have
“low rent, inferior maintenance, poor and unstable occupancy, poor signage, poor
design, no quality tenants, poor tenant mix, weak anchor tenant, or failure to attract
customer traffic.” From this initial query, Brown came up with 24 properties. Brown
then further restricted the query to properties between 60,000 and 200,000 square
feet. This left Brown with nine properties.
          Brown then made adjustments in value according to the properties’ location,
age, and size. For location, he made upward adjustments to a couple of properties
that he believed to be in locations inferior to Kempwood’s location. For age, Brown
made downward adjustments on some of the newer properties. For size, Brown made
downward adjustments on some of the smaller properties.
          Brown’s final list contained properties both larger and smaller than Kempwood
to avoid the first problem in Wiengarten, that of choosing only smaller compared
properties. Brown searched HCAD’s website with the criteria of land use code 343
and building class D to avoid the third problem in Weingarten, that of selecting only
a small number of compared properties. While the final list was of the same
approximate size as in Weingarten, the intent was to make it a list of properties
significantly similar to Kempwood. Although Brown only made adjustments for
physical characteristics, he felt that, because the criteria he used in his search already
encompassed economic factors, he had avoided the need to make further adjustments
and had avoided the fifth problem in Weingarten, that of making limited adjustments.
          We note, additionally, that the second problem in Weingarten is not, in and of
itself, a problem. If property has been inappropriately appraised, it would not be
surprising for the per-square-foot appraisal values of the compared properties to be
lower than that of the complained of property. Regardless, HCAD admitted at trial
that the second Weingarten problem was not a problem in this case.
                    b.       Basic Methodology
          HCAD presents a list of problems that, it argues, prevents Brown’s analysis
from being considered reliable. First, HCAD argues that Brown admitted at trial that
the report was “not really an appraisal” and that he did not comply with the standards
of the Uniform Standards of Comparables. However, in respect to both points,
Brown’s testimony clarified how he developed his report. Contextually, his
statements contained no admission of error.
          Similarly, HCAD complains that Brown “made no effort to verify [HCAD’s]
information.” However, we cannot see why Brown should be expected to verify
HCAD’s data. HCAD also complains that Brown did not look at all of the compared
properties. This is incorrect. Brown testified that either he or his assistant viewed
each compared property as well as Kempwood.
          In reference to Weingarten, HCAD argues that nine properties was not a
reasonable number for the purposes of the former subsection 42.26(d) of the Texas
Tax Code. We disagree. Brown ran a query for similar properties in the same
approximate area as Kempwood in order to avoid the pitfall of comparing unrelated
properties. Based on his criteria, he was left with nine properties. Thus, Brown had
the choice to either base his evaluation on those nine properties or to expand his list
by including properties that had fewer similarities to Kempwood.
                    c.       Comparability of Properties
          HCAD complains that Brown did not research the occupancy rates of the
compared properties. Brown admitted that he did not, but he also said that the
classification of building class D already accounted for this characteristic. This was
never controverted at trial.
          HCAD complains that four of the compared properties were divided among
different owners with different HCAD accounts and that Brown only used one of the
accounts for each of the four. This is similar to the charge that the expert witness in
Weingarten carved out portions of some of the compared properties. Id. at 286. We
consider this argument to have some merit and review it further in section 4 below.
                    d.       Adjustments
          According to HCAD’s website, the year of construction for Kempwood was
1970. During discovery, Hartman turned over an SEC filing that listed the year of
construction as 1974. HCAD argues that Brown’s adjustments for age were flawed
because they did not take into account the correct year that Kempwood was
constructed. However, there is no indication that HCAD ever used the 1974 year
either. Considering that this suit was brought under the legal theory that Kempwood
was appraised unequally based on a comparison to the median value of similar
properties, it was reasonable for Brown to base his conclusions on the same data that
HCAD used in determining the appraised value. Absent a showing that HCAD did
not use 1970 as the year of construction, we hold there was no error in Brown’s using
the same year.
          For the properties that Brown did adjust for age, HCAD argues that Brown was
unable to “explain the math” behind his adjustments. While Brown did provide a
rationale for the adjustments he made, there was no precise mathematical formulation
that lead to his using 15% as the rate of adjustment. However, this was not required. 
Appraising property is not an exact science based on set mathematical formulas. It
is not error for an appraiser to use his or her personal experience and expertise to
make certain determinations. Exxon Pipeline Co. v. Zwahr, 35 S.W.3d 705, 711 (Tex.
App.—Houston [1st Dist.] 2000) rev’d on other grounds, 88 S.W.3d 623 (Tex. 2002). 
The question is whether there is too great of an analytical gap between the data and
Brown’s determinations. Gammill, 972 S.W.2d at 727. For each of the compared
properties adjusted with respect to age, Brown used the same 15% rate of adjustment;
thus, the lack of a mathematical formula in this circumstance does not raise any
suspicion of an analytical gap.
          Next, HCAD argues that Brown failed to adjust the properties based on their
“effective age,” that is, he presumed that each property received the same level of
individual wear and tear, maintenance, updating, and remodeling over the years. 
First, even if this were correct, no evidence was presented to counter this
presumption. Second, Brown stated that the building class D made these adjustments
for him. Therefore, a manual adjustment by Brown was not required. Again, no
evidence was presented to suggest this was incorrect.
          HCAD presented evidence that three of the compared properties had been built
in phases, instead of all at once. For at least two of the properties, Brown
acknowledged that he had not made any adjustments due to the phased construction
of the buildings. While HCAD failed to clarify the impact of the lack of these
adjustments, we consider this argument to have some merit and discuss it further in
section 4 below.
          For locational adjustments, HCAD complains that Brown “did no analysis of
market sales, rents, occupancies, or anything else.” Again, these were factors that
Brown argued were incorporated into the building class D characteristic. By using
this characteristic in limiting his search, Brown argued that the appropriate
adjustments had already been made.
                    e.       Building Class D
          HCAD complains that one of the properties in Brown’s compared properties
was in fact a building class C property. Even if there was error in Brown’s list of
compared properties, this cannot be said to have harmed HCAD. A classification as
a building class C property results in a higher appraised value than a building class
D. Any error in this regard would only raise the median appraised value of the
properties and undercut Hartman’s cause of action.
          We recognize that Brown made a number of adjustment decisions based on the
assumption that the building class D already accounted for a number of factors. To
clarify, we do not hold today that those assumptions were correct. Instead, we note
that Brown presented his bases for developing his underlying data. One of those
bases was the building class D, and HCAD’s own description of what that
classification meant: properties which have “low rent, inferior maintenance, poor and
unstable occupancy, poor signage, poor design, no quality tenants, poor tenant mix,
weak anchor tenant, or failure to attract customer traffic.” From that classification,
Brown asserted that there was no further need to make certain economic adjustments
to the compared properties. While HCAD questioned the reliability of that
assumption multiple times, it presented no evidence to show that this assumption was
incorrect.
          It is true that Hartman bore the burden of establishing that Brown was
qualified. Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996). However, the trial
court found that Hartman met its burden, and absent contradictory evidence, we
cannot say that the court abused its discretion in making this determination.
                    f.       Market Value
          HCAD complains that Brown had no idea what the market values of
Kempwood or the compared properties were. HCAD argues that United Investors,
a case in the line of Weingarten, holds that when there is no evidence of market value,
the court should presume that all of the properties were valued at their market value. 
Harris County Appraisal Dist. v. United Investors Realty Trust, 47 S.W.3d 648, 654
(Tex. App.—Houston [14th Dist.] 2001, pet. denied). HCAD further argues that,
because there is evidence of Kempwood’s market value in 1999, it would be
unconstitutional not to use that value. We, however, find no such holding in United
Investors. Instead, United Investors held that “it is unfair, and constitutionally
prohibited, to require one taxpayer to pay a tax based on market values if other
taxpayers are paying a rate that is lower than the market value of their properties . .
. . If a conflict exists between taxation at market value and equal and uniform
taxation, equal and uniform taxation must prevail.” Id. Further, the former
subsection 42.26(d) of the Texas Tax Code required only an analysis between the
appraised value of the property and the median appraised value of a reasonable
number of comparable properties appropriately adjusted. Act of June 1, 1997, 75th
Leg., R.S., ch. 1039, § 42, 1997 Tex. Gen. Laws 3897, 3917 (amended 2003).
          4.       Reviewing Trial Court’s Ruling
          After considering all of HCAD’s arguments against the reliability of Brown,
the two problems we are left with is that four of the compared properties were divided
among different owners and that three of the compared properties had additional
construction in later years. These problems raise some question as to the reliability
of Brown’s underlying data, and the trial court expressed misgivings about the
reliability of Brown’s data. Nevertheless, a trial court enjoys wide latitude in
determining whether expert testimony is admissible. Keo v. Vu, 76 S.W.3d 725, 730
(Tex. App.—Houston [1st Dist.] 2002, pet. denied). Here, the trial court carefully
considered the same arguments presented by HCAD on appeal. The two problems
that HCAD points out do not rise to the level as to make the trial court’s ruling
arbitrary, unreasonable, or made without reference to any guiding rules or legal
principles. We hold that the trial court did not abuse its discretion in admitting
Brown’s expert testimony.
          Appellant’s point of error is overruled.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Higley.