HARRIS COUNTY APPRAISAL
DISTRICT, Appellant,

v.

(KEMPWOOD PLAZA LTD.) Hartman
Reit Operating Partnership, L.P.,
Appellee.

No. 01–05–00183–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 5, 2006.

Rehearing Overruled March 7, 2006.

G. Todd Stewart, Olson & Olson, Houston, for appellant.

Leslie Diane Hensley, Alan N. Magenheim, Magenheim & Associates, Houston, for appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellee, Hartman Reit Operating Partnership, L.P. (Hartman), sued appellant,

Harris County Appraisal District (HCAD), to lower its ad valorem tax liability for tax years 1999 through 2003 for its Kempwood Plaza LTD. (Kempwood) property. Prior to the trial, HCAD filed a motion to exclude Gary Brown, Hartman's expert appraisal witness. The trial court denied HCAD's motion. HCAD subsequently re-urged the motion prior to Brown's testimony, after Hartman closed, and—after the jury returned a verdict in favor of Hartman—in a motion for judgment notwithstanding the verdict. Each time, the trial court denied the request. HCAD now appeals the judgment, arguing in one point of error that it was error for the trial court to have admitted Brown's testimony.

We affirm.

### Background

Kempwood is classified by HCAD under the land use code of 343 (a neighborhood shopping center) and the building class of D (a property which has "low rent, inferior maintenance, poor and unstable occupancy, poor signage, poor design, no quality tenants, poor tenant mix, weak anchor tenant, or failure to attract customer traffic"). The property is 112,072 square feet. To support its contention that the Kempwood property was unequally appraised, Hartman hired Brown to assess the appraised value of comparable properties. Brown's research consisted primarily of compiling data taken from HCAD's website. Brown began by looking for properties in the surrounding area with the land use code of 343 and the building class of D. This produced a list of 24 properties. From that list, Brown restricted it to properties between 60,000 and 200,000 square feet. This left Brown with nine properties.

Brown then made adjustments in value according to the properties' location, age, and size. For location, he made upward adjustments to a couple of properties that

he believed to be in inferior locations. For age, Brown made downward adjustments on some of the newer properties. For size, Brown made downward adjustments on some of the smaller properties.

Brown finally calculated the median per-square-foot value of the properties for each tax year, and applied those values to Kempwood. The final calculations showed a significant disparity between Brown's median value and the value assessed by HCAD.

### Admission of Expert Witness

In its sole point of error, HCAD argues that the trial court erred in admitting the testimony of Hartman's expert witness, Gary Brown.

### A. Standard of Review

 We review a trial court's ruling on a motion to exclude an expert witness under an abuse of discretion standard. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718–19 (Tex.1998); *Wolfson v. BIC Corp.*, 95 S.W.3d 527, 531 (Tex. App.-Houston [1st Dist.] 2002, pet. denied). We will not reverse a trial court's judgment even if we would have held differently, or even if the trial court made a mere error in judgment. *Id.* at 531–32. Instead, we only reverse if the trial court acted without reference to any guiding rules or principles. *Id.* at 532. Thus, a trial court enjoys wide latitude in determining whether expert testimony is admissible. *Id.*

### B. Analysis

 In *Gammill*, our supreme court held that all expert testimony must be relevant and reliable under Rule of Evidence 702. 972 S.W.2d at 727. Appraisal expertise is a form of "specialized knowledge [used to] assist the trier of fact to determine a fact in issue." *Guadalupe-*

*Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 807 (Tex.2002) (quoting TEX.R. EVID. 702). It is therefore subject to *Gammill's* relevance and reliability requirements. *Id.* The proponent of expert testimony must show that the opinions are both relevant to the issues and based upon a reliable foundation. *Id.; E.I. du Pont de Nemours & Co., Inc. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995) (adopting analysis of *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589–90, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)). The trial court must make the threshold determination of whether the testimony meets both the relevancy and reliability standards for admissibility under Rule 702. *Robinson,* 923 S.W.2d at 557.

### 1. Qualifications

■ Although Rule 702 of the Texas Rules of Evidence requires a finding that the witness is qualified to testify, we do not review that finding in this appeal. During the trial, HCAD stipulated that Brown was qualified as a real estate appraiser. In its brief, however, HCAD argues that it did not stipulate to Brown being qualified to determine (1) what a reasonable number of properties was, (2) what qualified as a comparable property, or (3) how to make appropriate adjustments. Regardless, this is part of the work involved in making appraisals. If HCAD had not meant to stipulate to Brown's qualifications in these areas, it should have qualified its stipulation at trial. *See Hansen v. Academy Corp.,* 961 S.W.2d 329, 335 (Tex.App.-Houston [1st Dist.] 1997, pet. denied) (enforcing stipulation because it was clear and no qualification given to court). We hold this argument is waived.

1. While there appears to be little change in the current version of the statute, we emphasize that determining the effect of the changes

### 2. Relevance

■ The relevance requirement, which incorporates traditional relevancy analysis under Rules of Evidence 401 and 402, is met if the expert testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Robinson,* 923 S.W.2d at 556. Evidence that has no relationship to any issue in the case does not satisfy rule 702 and is thus inadmissible under rule 702, as well as under rules 401 and 402. *Id.*

The original suit was brought under the former subsection 42.26(d) of the Texas Tax Code. Act of June 1, 1997, 75th Leg., R.S., ch. 1039, § 42, 1997 Tex. Gen. Laws 3897, 3917 (amended 2003) (current version at TEX. TAX.CODE § 42.26(a)(3) (Vernon Supp.2005)).[1] The former subsection 42.26(d) provided "[t]he district court shall grant relief on the ground that a property is appraised unequally if the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted." *Id.* Thus, Brown's job for the trial, at minimum, was to find a reasonable number of comparable properties, make appropriate adjustments, and compare the median appraisal value of those properties to the appraisal value applied to Kempwood. This is what he did.

### 3. Reliability

■ This case turns, then, on whether Brown's underlying data was reliable. When the reliability of an expert's testimony is challenged, the trial court must "gauge" the expert's reliability by ensuring "that the opinion comports with applicable professional standards outside the courtroom." *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001) (quoting *Gam-*

is not before this Court today. Our analysis is concerned solely with the previous version.

*mill,* 972 S.W.2d at 725–26). In applying this reliability standard, however, the trial court does not decide whether the expert's conclusions are correct; rather, the trial court determines whether the analysis used to reach those conclusions is reliable. *Gammill,* 972 S.W.2d at 728. Expert testimony is also unreliable if there is too great an analytical gap between the data upon which the expert relies and the opinion offered. *Id.* at 727.

### a. *Weingarten*

■ Both parties pay significant attention to *Weingarten Realty Investors v. Harris County Appraisal District,* 93 S.W.3d 280 (Tex.App.-Houston [14th Dist.] 2002, no pet.). The facts of *Weingarten* are very similar to this case. However, in that case, the trial court granted HCAD's motion to exclude the expert witness. *Id.* at 283. The Fourteenth Court of Appeals affirmed, finding the following deficiencies in the witness's underlying data: (1) the compared properties were significantly smaller than the Weingarten property; (2) nine of the ten compared properties had per-square-foot appraised values significantly lower than the Weingarten property; (3) the expert only compared ten properties, even though there were 191 retail centers in the same quadrant as the Weingarten property; (4) the expert carved out portions of some of the compared properties due to disparate ownership; (5) the adjustments made to the compared properties were only for physical characteristics of conditions, age, size, and location; and (6) the amount of adjustment for each characteristic of the compared properties was subjective. *Id.* at 285–86.

In formulating his analysis, Brown attempted to avoid the pitfalls of *Weingarten.* Brown's research consisted primarily of compiling data taken from HCAD's website. Brown began by looking for properties in the surrounding area with land use code 343 and building class D.[2] Properties under land use code 343 are neighborhood shopping centers. Building class D applies to properties which have "low rent, inferior maintenance, poor and unstable occupancy, poor signage, poor design, no quality tenants, poor tenant mix, weak anchor tenant, or failure to attract customer traffic." From this initial query, Brown came up with 24 properties. Brown then further restricted the query to properties between 60,000 and 200,000 square feet. This left Brown with nine properties.

Brown then made adjustments in value according to the properties' location, age, and size. For location, he made upward adjustments to a couple of properties that he believed to be in locations inferior to Kempwood's location. For age, Brown made downward adjustments on some of the newer properties. For size, Brown made downward adjustments on some of the smaller properties.

Brown's final list contained properties both larger and smaller than Kempwood to avoid the first problem in *Weingarten,* that of choosing only smaller compared properties. Brown searched HCAD's website with the criteria of land use code 343 and building class D to avoid the third problem in *Weingarten,* that of selecting only a small number of compared properties. While the final list was of the same approximate size as in *Weingarten,* the intent was to make it a list of properties significantly similar to Kempwood. Although Brown only made adjustments for physical characteristics, he felt that, because the criteria he used in his search already encompassed economic factors, he

---

2. The land use codes and property classes were developed by HCAD. These descriptions are applied to each property listed on its website.

had avoided the need to make further adjustments and had avoided the fifth problem in *Weingarten,* that of making limited adjustments.

We note, additionally, that the second problem in *Weingarten* is not, in and of itself, a problem. If property has been inappropriately appraised, it would not be surprising for the per-square-foot appraisal values of the compared properties to be lower than that of the complained of property. Regardless, HCAD admitted at trial that the second *Weingarten* problem was not a problem in this case.

### b. Basic Methodology

HCAD presents a list of problems that, it argues, prevents Brown's analysis from being considered reliable. First, HCAD argues that Brown admitted at trial that the report was "not really an appraisal" and that he did not comply with the standards of the Uniform Standards of Comparables. However, in respect to both points, Brown's testimony clarified how he developed his report. Contextually, his statements contained no admission of error.

Similarly, HCAD complains that Brown "made no effort to verify [HCAD's] information." However, we cannot see why Brown should be expected to verify HCAD's data. HCAD also complains that Brown did not look at all of the compared properties. This is incorrect. Brown testified that either he or his assistant viewed each compared property as well as Kempwood.

In reference to *Weingarten,* HCAD argues that nine properties was not a reasonable number for the purposes of the former subsection 42.26(d) of the Texas Tax Code. We disagree. Brown ran a query for similar properties in the same approximate area as Kempwood in order to avoid the pitfall of comparing unrelated properties. Based on his criteria, he was left with nine properties. Thus, Brown had the choice to either base his evaluation on those nine properties or to expand his list by including properties that had fewer similarities to Kempwood.

### c. Comparability of Properties

HCAD complains that Brown did not research the occupancy rates of the compared properties. Brown admitted that he did not, but he also said that the classification of building class D already accounted for this characteristic. This was never controverted at trial.

HCAD complains that four of the compared properties were divided among different owners with different HCAD accounts and that Brown only used one of the accounts for each of the four. This is similar to the charge that the expert witness in *Weingarten* carved out portions of some of the compared properties. *Id.* at 286. We consider this argument to have some merit and review it further in section 4 below.

### d. Adjustments

According to HCAD's website, the year of construction for Kempwood was 1970. During discovery, Hartman turned over an SEC filing that listed the year of construction as 1974. HCAD argues that Brown's adjustments for age were flawed because they did not take into account the correct year that Kempwood was constructed. However, there is no indication that HCAD ever used the 1974 year either. Considering that this suit was brought under the legal theory that Kempwood was appraised unequally based on a comparison to the median value of similar properties, it was reasonable for Brown to base his conclusions on the same data that HCAD used in determining the appraised value. Absent a showing that HCAD did not use 1970 as the year of construction,

we hold there was no error in Brown's using the same year.

For the properties that Brown did adjust for age, HCAD argues that Brown was unable to "explain the math" behind his adjustments. While Brown did provide a rationale for the adjustments he made, there was no precise mathematical formulation that lead to his using 15% as the rate of adjustment. However, this was not required. Appraising property is not an exact science based on set mathematical formulas. It is not error for an appraiser to use his or her personal experience and expertise to make certain determinations. *Exxon Pipeline Co. v. Zwahr*, 35 S.W.3d 705, 711 (Tex.App.-Houston [1st Dist.] 2000) *rev'd on other grounds*, 88 S.W.3d 623 (Tex.2002). The question is whether there is too great of an analytical gap between the data and Brown's determinations. *Gammill*, 972 S.W.2d at 727. For each of the compared properties adjusted with respect to age, Brown used the same 15% rate of adjustment; thus, the lack of a mathematical formula in this circumstance does not raise any suspicion of an analytical gap.

Next, HCAD argues that Brown failed to adjust the properties based on their "effective age," that is, he presumed that each property received the same level of individual wear and tear, maintenance, updating, and remodeling over the years. First, even if this were correct, no evidence was presented to counter this presumption. Second, Brown stated that the building class D made these adjustments for him. Therefore, a manual adjustment by Brown was not required. Again, no evidence was presented to suggest this was incorrect.

HCAD presented evidence that three of the compared properties had been built in phases, instead of all at once. For at least two of the properties, Brown acknowl-

edged that he had not made any adjustments due to the phased construction of the buildings. While HCAD failed to clarify the impact of the lack of these adjustments, we consider this argument to have some merit and discuss it further in section 4 below.

For locational adjustments, HCAD complains that Brown "did no analysis of market sales, rents, occupancies, or anything else." Again, these were factors that Brown argued were incorporated into the building class D characteristic. By using this characteristic in limiting his search, Brown argued that the appropriate adjustments had already been made.

### e. Building Class D

HCAD complains that one of the properties in Brown's compared properties was in fact a building class C property. Even if there was error in Brown's list of compared properties, this cannot be said to have harmed HCAD. A classification as a building class C property results in a higher appraised value than a building class D. Any error in this regard would only raise the median appraised value of the properties and undercut Hartman's cause of action.

We recognize that Brown made a number of adjustment decisions based on the assumption that the building class D already accounted for a number of factors. To clarify, we do not hold today that those assumptions were correct. Instead, we note that Brown presented his bases for developing his underlying data. One of those bases was the building class D, and HCAD's own description of what that classification meant: properties which have "low rent, inferior maintenance, poor and unstable occupancy, poor signage, poor design, no quality tenants, poor tenant mix, weak anchor tenant, or failure to attract customer traffic." From that classifica-

tion, Brown asserted that there was no further need to make certain economic adjustments to the compared properties. While HCAD questioned the reliability of that assumption multiple times, it presented *no evidence to show that this assumption was incorrect.*

It is true that Hartman bore the burden of establishing that Brown was qualified. *Broders v. Heise,* 924 S.W.2d 148, 151 (Tex.1996). However, the trial court found that Hartman met its burden, and absent contradictory evidence, we cannot say that the court abused its discretion in making this determination.

### f. Market Value

■ HCAD complains that Brown had no idea what the market values of Kempwood or the compared properties were. HCAD argues that *United Investors,* a case in the line of *Weingarten,* holds that when there is no evidence of market value, the court should presume that all of the properties were valued at their market value. *Harris County Appraisal Dist. v. United Investors Realty Trust,* 47 S.W.3d 648, 654 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). HCAD further argues that, because there is evidence of Kempwood's market value in 1999, it would be unconstitutional not to use that value. We, however, find no such holding in *United Investors.* Instead, *United Investors* held that "it is unfair, and constitutionally prohibited, to require one taxpayer to pay a tax based on market values if other taxpayers are paying a rate that is lower than the market value of their properties.... If a conflict exists between taxation at market value and equal and uniform taxation, equal and uniform taxation must prevail." *Id.* Further, the former subsection 42.26(d) of the Texas Tax Code required only an analysis between the appraised value of the property and the median appraised value of a reasonable num-

ber of comparable properties appropriately adjusted. Act of June 1, 1997, 75th Leg., R.S., ch. 1039, § 42, 1997 Tex. Gen. Laws 3897, 3917 (amended 2003).

### 4. Reviewing Trial Court's Ruling

After considering all of HCAD's arguments against the reliability of Brown, the two problems we are left with is that four of the compared properties were divided among different owners and that three of the compared properties had additional construction in later years. These problems raise some question as to the reliability of Brown's underlying data, and the trial court expressed misgivings about the reliability of Brown's data. Nevertheless, a trial court enjoys wide latitude in determining whether expert testimony is admissible. *Keo v. Vu,* 76 S.W.3d 725, 730 (Tex. App.-Houston [1st Dist.] 2002, pet. denied). Here, the trial court carefully considered the same arguments presented by HCAD on appeal. The two problems that HCAD points out do not rise to the level as to make the trial court's ruling arbitrary, unreasonable, or made without reference to any guiding rules or legal principles. We hold that the trial court did not abuse its discretion in admitting Brown's expert testimony.

Appellant's point of error is overruled.

### Conclusion

We affirm the judgment of the trial court.