Affirmed and Opinion filed August 26,
2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00380-CV



Harris County
Appraisal District, Appellant 

v.

Houston
Laureate Associates Ltd. and Levering & Company, Appellees 



On Appeal from
the 234th District Court

Harris County, Texas

Trial Court
Cause No. 2006-64087



 

OPINION 

In this ad valorem property tax case, appellant
Harris County Appraisal District (“HCAD”) challenges the trial court’s judgment
adjusting the appraised value of the property owned by appellees Houston
Laureate Associates Ltd. and Levering & Company (collectively, “Houston
Laureate”).  In two issues, HCAD asserts that there is no evidence to support
the judgment because (1) Houston Laureate’s attorney violated the Texas
Disciplinary Rules of Professional Conduct by presenting its unequal valuation expert’s
testimony and (2) this expert’s research and analysis were not reliable.  We
affirm.

Background

Property owners Houston Laureate sued HCAD under
Chapter 42 of the Texas Property Tax Code.  Houston Laureate alleged, that HCAD
had unequally appraised their property, located on Memorial Drive in Houston,
for tax year 2006.  The case was tried to the bench in December 2008.  At
trial, only two witnesses testified:  Gary Levering, the president of Houston
Laureate Associates, Ltd., and Delain Goddard, a certified appraiser employed
by Property Evaluation Services. 

Levering testified that Houston Laureate has a
contingency fee agreement with tax consultants O’Connor & Associates.  According
to Levering, Houston Laureate pays O’Connor & Associates a fee contingent
on O’Connor & Associates’s ability to get Houston Laureate’s property tax
lowered.  Levering testified that he believed the contingency fee was twenty-five
percent.  He further stated that he “assumed” O’Connor & Associates hired and
paid the attorney and the expert witness for this trial.  He explained that he
had consulted with O’Connor & Associates before filing suit, but that the
property manager of this particular property, Todd Casper, had actually been
the individual involved in the decision-making process regarding the lawsuit. 
Todd Casper did not testify at trial.

Goddard testified and described his background and
experience as a certified appraiser.[1] 
He testified that he had formerly been employed by O’Connor & Associates,
but in 2005, he and two colleagues formed Property Evaluation Services as “a
separate business venture outside of O’Connor.”  According to Goddard, he and
his colleagues left O’Connor & Associates because they were concerned about
“an issue in the courts with attorneys using expert . . . witnesses
who were employed by companies that had a contingency interest in the cases
that they were assigned to.”  The following exchange on cross-examination
between HCAD’s attorney and Goddard sets out the salient points regarding the
relationship between Property Evaluation Services and O’Connor &
Associates:

Q.        Can you explain for the Court what exactly is
PES’s arrangement or contract with O’Connor; how it works?

A.        Well, through the ongoing agreement, we have
pretty much a standing order to analyze all the property cases that they have
in litigation to determine if they’re unequally assessed in regards to how any
particular appraisal district assesses their values.  We’ll perform market
value studies from time to time.  And, then, we are to serve as expert
witnesses either in deposition or at trial over the cases that we’ve prepared.

And, then, part of our
arrangement, like I had mentioned before, allows us access to a group of
clerical administrative people that help to schedule the work, the actual
production part of it as far as the paperwork and that type of thing.  We have
assistance in assembling the data and sometimes the exhibits that might be
included in particular work-file supplementation. And, then, the agreement for
subleasing the office space and office furniture and computers.

. . .

Q.        And how is PES compensated for the work that it
does for O’Connor?

A.        I think it’s simply a monthly flat fee that is
designed to accommodate the salaries of the appraisers who work for Property
Evaluation Services.

. . .

Q.        Are there any bonuses or commissions that are
realized by any of your appraisers?

A.        No.  The only expert fees are just typical expert
witness fees that would be invoiced, for example, in this case I’ll invoice
O’Connor through PES for a fee for appearing here, but it’s a flat fee.

Q.        What is that flat fee?

A.        $1,500.

Q.        Is that a flat fee that is paid to all the experts
that testify at trial at PES?

A.        Currently that’s our standard trial testimony fee
that we invoice to O’Connor.

Regarding the methodology underlying his unequal
appraisal determination, Goddard explained that he found comparable properties
using criteria including physical and geographic characteristics.  He relied on
HCAD’s own property designations to find other high-rise “Class A” properties
within a ten mile radius of the subject property.  He located eighteen
comparable properties, which he opined was a “reasonable” number.  He explained
the various adjustments he made to these properties’ appraised values so they
would be comparable to the Memorial Drive property, including adjustments for
size, age, and location.  Several of the properties he identified as
comparables had changes to their appraised values during the pendency of the
suit.  Goddard adjusted his calculations based on the newer appraised values. 
In addition, HCAD established that several of the comparable properties had
separately accounted-for parking garages, but the Memorial Drive property had a
parking garage included in its appraised value; again Goddard adjusted his
calculations to include the appraised value of the parking garages for those
buildings for which the parking garages were separately accounted.  Ultimately,
Goddard opined that the subject property had been unequally appraised in
relation to the comparable properties.  He further calculated the median
appraised value of the comparable properties at $86.96 per square foot.

After hearing the testimony and argument of counsel,
the trial court found in favor of Houston Laureate and reduced the 2006
appraised value of the Memorial Drive property.  On March 11, 2009, the trial
court entered findings of fact and conclusions of law in support of its
judgment.  This appeal followed.

Analysis

In its first issue, HCAD asserts that the
presentation of Goddard’s testimony violated the prohibitions of Texas Rule of
Professional Conduct 3.04(b) and Professional Ethics Committee for the State Bar
of Texas Opinion No. 553 and thus constituted no evidence to support the trial
court’s judgment.  We disagree.

HCAD cites no authority for the proposition that an
attorney’s alleged violation of an ethical rule provides a basis for excluding
evidence.  Indeed, the Court of Criminal Appeals has held that violation of
attorney disciplinary rules in obtaining evidence for a criminal proceeding
does not bar introduction of that evidence at trial.  Gentry v. State,
770 S.W.2d 780, 790–91 (Tex. Crim. App. 1988); cf. Tex. Disciplinary R. Prof’l Conduct
Preamble ¶¶ 14–15, reprinted in Tex.
Gov’t Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (“[T]hese rules
are not designed to be standards for procedural decisions.  Furthermore, the
purpose of these rules can be abused when they are invoked by opposing parties
as procedural weapons.”).

Further, we see no violation of the ethical rule upon
which HCAD relies in this case.  Rule of Professional Conduct 3.04(b) provides,
in pertinent part, as follows:  “A lawyer shall not . . . pay, offer to pay, or
acquiesce in the offer or payment of compensation to a witness or other entity
contingent upon the content of the testimony of the witness or the outcome of
the case.”  Tex. Disciplinary R. Prof’l
Conduct 3.04(b).  In turn, Ethics Opinion No. 553 addresses the
following question, “Is a lawyer prohibited from offering the testimony of an
expert witness whose employer has entered into a contingent fee contract with
the lawyer’s client regarding the subject matter of the litigation?”  Op. Tex.
Ethics Comm’n No. 553 (2004).  The Professional Ethics Committee for the State
Bar of Texas concluded that “[i]t is a violation of the Texas Disciplinary
Rules of Professional Conduct for a lawyer to use in a case as an expert
witness an employee of a business entity that has a contingent fee interest in
the outcome of the case.”  Id.

Here neither Goddard nor his employer, Property Evaluation
Services, had a contingency interest in the outcome of this lawsuit.  Indeed, Goddard
testified unequivocally that he was employed by Property Evaluation Services
and that his employer was to be paid a flat fee for his services as an expert witness. 
This flat fee was to be paid by O’Connor & Associates, which presumably had
a contingency interest in the litigation.[2] 
Such an arrangement is similar to an attorney with a contingency-fee
arrangement hiring, for a flat fee, an expert to testify at his client’s
trial.  Such an arrangement is perfectly acceptable, so long as the payment of
the expert’s fee is not contingent upon the content of the testimony or the
outcome of the trial.  Tex. Disciplinary
R. Prof’l Conduct 3.04(b)(3) (providing that a lawyer may advance,
guarantee, or acquiesce in the payment of a reasonable fee for the professional
services of an expert witness).  

In short, there is simply nothing in the record to
suggest that Goddard’s fee was contingent upon the content of his testimony. 
In fact, the following questions by the trial court clarified that the expert’s
fee was not contingent upon the outcome of the case:  

The Court:  The -- as I appreciate it, the expert was paid,
period.  Now, whether the original property agent to challenge the appraisal
gets a fee or not, that person still has to pay the expert.

[Houston Laureate’s Counsel]:  Yes.  Yes.  The expert has
been paid.

The Court:  And if -- if I . . . enter a take-nothing
judgment for the plaintiffs, the expert doesn’t return the money.

[Houston Laureate’s Counsel]:  No.  He’s been paid.

The Court:  And if I end up entering a judgment in favor of
the plaintiffs, does the expert get any additional money?

[Houston Laureate’s Counsel]:  No.

Thus, Goddard had no
contingency interest in the outcome of the case and was paid his fee regardless
of whether O’Connor & Associates received its contingency fee.  Under these
circumstances, we overrule HCAD’s first issue.

In issue two, HCAD contends that Goddard’s testimony
was inadmissible and constituted no evidence because his research and analysis
were not reliable.  Specifically, HCAD asserts that Goddard’s expert report
contained multiple errors and omissions, Goddard included no support for his
assumptions in making the adjustments to the comparable properties’ appraised
values, and he lacked knowledge of the individual characteristics of either the
subject property or the properties he selected as comparables.

We review a trial court’s decision to admit or
exclude an expert witness for an abuse of discretion.[3]  Weingarten
Realty Investors v. Harris County Appraisal Dist., 93 S.W.3d 280, 283 (Tex.
App.—Houston [14th Dist.] 2002, no pet.) (citing Helena Chem. Co. v. Wilkins,
47 S.W.3d 486, 499 (Tex. 2001)).  Under this familiar standard, the trial court
abuses its discretion when its ruling is arbitrary, unreasonable, or made
without reference to any guiding rules or legal principles. Id.  Expert
testimony is admissible only if the expert is qualified and the evidence is
relevant and based on a reliable foundation.  Id. at 284 (citing E.I.
du Pont de Nemours & Co. v. Robinson, 933 S.W.2d 549, 556 (Tex.
1995)).  

Here, HCAD only challenges the reliability of
Goddard’s research and analysis.  In non-scientific cases such as this one, the
trial court ultimately has discretion to determine how to assess reliability.  Id. 
In determining whether an expert’s research and analysis is based on a reliable
foundation, the trial court does not decide whether the expert’s conclusions
are correct; instead, the trial court must determine whether the analysis used
to reach those conclusions is reliable.  Harris County Appraisal Dist. v.
Kempwood Plaza Ltd., 186 S.W.3d 155, 159 (Tex. App.—Houston [1st Dist.]
2006, pet. ref’d) (citing Gammill v. Jack Williams Chevrolet, Inc., 972
S.W.2d 713, 728 (Tex. 1998)).

HCAD identifies the following “errors” in Goddard’s
report and testimony:

·       
One of the properties Goddard claimed was comparable had to be
eliminated from the list because it was exempt from property tax.

·       
The appraised values of several of the comparable properties were
incorrect.

·       
Several of the comparable properties had separate appraisal
accounts for their parking garages, although the subject property had a parking
garage included in its appraised value.

Each of these issues was,
however, addressed by Goddard’s testimony.  First, the property that was exempt
from property tax was removed from the list of comparable properties.  Second,
the properties HCAD refers to as having “incorrect” appraised values had their
appraised values adjusted downward during the pendency of this suit.  In fact,
Goddard explained the fluidity of appraised values as follows: 

[T]he values, especially of properties at this value level,
are constantly changing due to litigation process, correction motions.  And I
don’t consider value when I’m doing these comparisons, so I’m not relying on
those values.  I’m simply showing the value that the appraisal district is
carrying on the property at the time I do the analysis.

It’s not unlikely that during the beginning of the analysis
to the final resolution that some of those comparable property’s values may
very well indeed change, which in this case we’ve seen.

Third, Goddard testified that
adding the appraised values of the parking garages to the appraised values of
the two buildings with separately accounted-for parking garages did not change
the median appraised value of the comparable properties.  Goddard further
opined that none of these adjustments in value changed his ultimate opinion
that the subject property had been unequally appraised.  

In sum, Goddard testified that he identified numerous
comparable properties.  HCAD classified these properties with the same land use
codes—“Class A” high-rise properties.  Cf. id. (explaining that
appraiser selected properties from HCAD’s tax rolls with the same land use code
and building class as the subject property).  According to HCAD’s description
of this type of properties, Class A properties are income-producing properties with
similar physical characteristics, including both new and older properties in
desirable locations that command high rental rates, attract top quality
tenants, and have well-maintained finishes, with excellent design and
above-average workmanship and materials.  Goddard adjusted these appraised
values based on factors such as size, age, and location.  At trial, HCAD did
not challenge the specific adjustments Goddard made to these properties (other
than those issues identified supra), and an appraiser may use his
experience and expertise to make these types of adjustments.  See id. at
161.  Further, these adjustments are contemplated by the statutory scheme.  See
Tex. Tax Code Ann. §
42.26(a)(3) (Vernon 2008) (requiring the district court to grant relief based
on unequal appraisal if the “appraised value of the property exceeds the median
appraised value of a reasonable number of comparable properties appropriately
adjusted”); see also Kempwood Plaza Ltd., 186 S.W.3d at 159–60; Harris
County Appraisal Dist. v. United Investors Realty Trust, 47 S.W.3d 648, 650
n.4 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that appraiser
made adjustments based on, inter alia, location, age, and physical characteristics
of comparable properties).

In sum, we cannot say the trial court abused its
discretion in determining that Goddard’s testimony was reliable.  The fact that
some of the appraised values of the comparable properties Goddard identified
may have changed during the pendency of the suit does not make his data
unreliable, and Goddard changed his conclusions to reflect the more current
data.  This data was obtained using HCAD’s records and property
classifications, and HCAD provided no competing expert testimony that the properties
used by Goddard were not comparable.  See Kempwood Plaza Ltd., 186
S.W.3d at 160–62.  Moreover, because this evidence was admissible, the trial
court’s judgment is supported by the evidence.  Accordingly, we overrule HCAD’s
second issue.

Conclusion

            Having overruled
each of HCAD’s issues, we affirm the trial court’s judgment.

 

 








                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices Yates,
Seymore, and Brown.

 









[1]
Before Goddard testified, the trial court granted HCAD running objections to
his testimony on the grounds asserted on appeal.  





[2]
The record does not reflect the exact nature of the relationship between
O’Connor & Associates and Houston Laureate, but such a contingency interest
may be inferred from the testimony and evidence presented at trial.





[3]
Although HCAD asserts that there is no evidence to support the trial court’s
judgment because the expert’s testimony was unreliable, there would be no
evidence only if we determined that the trial court erred in admitting this
expert’s testimony.  Thus, the appropriate standard of review for this
particular issue is abuse of discretion. See, e.g., Helena Chem. Co.
v. Wilkins, 47 S.W.3d 486, 499 (Tex. 2001).