Opinion issued January 6, 2011                                                     

 

 



 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00707-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



KIMBERLY WILSON, Appellant

 

V.

 

IHSAN
SHANTI, M.D AND 

SHANTI
PAIN AND WELLNESS CLINIC, P.A.,
Appellees

 



 

On Appeal from the 215th District Court

Harris County, Texas

Trial Court Cause No. 2007-05068

 

 



O P
I N I O N

          Kimberly
Wilson filed a medical malpractice action against Dr. Ihsan Shanti and the
Shanti Pain and Wellness Clinic, P.A.  The
trial court excluded the testimony of Wilson’s expert and subsequently granted
summary judgment to Dr. Shanti.  In five
issues, Wilson contends the trial court erred by (1) excluding her expert’s
testimony as unreliable; (2) granting summary judgment when she raised a
disputed fact issue; and (3) allowing her motion for new trial to be overruled
by operation of law.  We affirm the
judgment of the trial court.

Background  

Dr. Shanti treated Wilson for pain in
her lower back and left leg.  Dr. Shanti
performed three sets of injections to treat her pain: (1) a facet joint
injection, (2) a median joint block, and (3) a radiofrequency thermal
coagulation procedure (RFTC).  For each
type of injection, Wilson first received an injection on her right side and
then returned a few days later for an injection on her left side.  

Even though the treatment was for her
left side, Wilson began to experience pain on her right side between the second
and third sets of injections.  Her pain on
both sides intensified after the RFTC injections.  Comparison of electromyogram (EMG) tests[1]
before and after treatment demonstrated nerve root damage not present before
Dr. Shanti’s injections.[2]  Wilson filed suit against Dr. Shanti and his
clinic for damaging her nerve root through improper administration of the
injections.  More specifically, Wilson
asserts the RFTC—the third set of injections designed to burn the nerve and
thereby alleviate pain—caused her nerve root damage and was conducted without
fluoroscopy.[3]  

Wilson attached a report by Dr. Mark
Barhorst to her original petition and designated him as her only expert.  Dr. Barhorst’s report stated that he
interviewed Wilson, performed a physical exam, and reviewed her medical records.  In Dr. Barhorst’s opinion, Dr. Shanti’s
treatment fell below the standard of care, and the third set of injections
caused increased pain to Wilson’s left side and introduced pain to her right
side.  His report stated that Wilson
“distinctly recall[ed] right leg pain beginning as a symptom immediately
following [the third set of injections].” 


Dr.
Barhorst gave a deposition in which he confirmed that his report was complete
and accurate.  He testified that his
causation opinion was based, in large part, on Wilson telling him her pain
started after the third set of injections. 
He also stated that his opinion would “not necessarily” be wrong if
Wilson’s pain had started before the third set of injections.  He offered no explanation during the
deposition, however, for how he could reach the same conclusion if this
significant factual basis for his opinion changed.  At her deposition, Wilson testified that her right-side
pain started between the second and third sets of injections and intensified
after the third.  Thus, her testimony
contradicted Dr. Barhorst’s testimony concerning the commencement of her pain.

          Dr.
Shanti filed a motion to exclude Dr. Barhorst’s causation opinion as unreliable.  He invoked the well-established Robinson factors for examining the
methodology used by the expert[4]
and the Gammill requirement that the
expert link his conclusions to the data or facts.[5]  He relied on the Havner requirement that the expert cannot base his opinion on
unreliable data.[6]  More specifically, he asserted Dr. Barhorst’s
opinion was based on an erroneous understanding that Wilson’s right-side pain
started after the third set of injections. 


In response, Dr. Barhorst prepared a
supplemental report that purported to correct the inconsistency between the
facts he had stated as the basis for his opinion and the facts as related by
Wilson in her deposition.  In his
supplemental report, Dr. Barhorst acknowledged Wilson’s deposition testimony
and asserted he based his original report and deposition testimony on an
inaccurate memory of his conversation with Wilson.  A review of his notes refreshed his
recollection that her right-side pain began after the second set of injections,
i.e. the medial block.  Dr. Barhorst stated
that these revised facts did not alter his conclusion, but he did not explain
why.  He stated that the second set of
injections may have been a proximate cause of her right-side pain, but the
third set of injections constituted “the most proximate cause” of her
nerve damage.  

After a hearing, the trial court
granted the motion and excluded testimony by Dr. Barhorst relating to Wilson’s
right-side pain.  Dr. Shanti then filed a
motion for summary judgment.  He attached
a letter signed by the attorneys for both parties agreeing that no additional
experts or opinions should be considered and that Wilson would replead to limit
her damages to the right-side leg pain.  Dr
Shanti also attached deposition testimony from Dr. Stephen Esses, one of
Wilson’s former treating physicians, who testified he saw no reason to believe
the injections caused Wilson’s injury.  Instead,
Dr. Esses identified the cause of Wilson’s pain as a progressive narrowing of
the canal where the nerves exit her spine. 
In her response, Wilson filed a motion to reconsider the motion to
exclude Dr. Barhorst’s testimony and admitted that she had no evidence on causation
without his opinion.  The trial court
granted summary judgment.

Wilson
timely filed a motion for new trial which was overruled by operation of
law.  

Reliability of Expert Testimony

Wilson contends the trial court
abused its discretion by granting Dr. Shanti’s motion to exclude Dr. Barhorst’s
testimony on the cause of her right-leg pain. 

I.       Standard of Review

 We
review a trial court’s ruling on the reliability of expert testimony for an
abuse of discretion.[7]  Under this standard, the trial court has
broad discretion in deciding whether to admit or exclude expert testimony.[8]  We
will uphold a trial court’s evidentiary ruling excluding expert testimony if a
legitimate basis for the ruling exists.[9]  We reverse only if the trial court
acted arbitrarily, unreasonably, or without reference to any guiding rules or
principles.[10]  An abuse of discretion is not demonstrated by
a mere error in judgment.[11]  Neither will an appellate court reverse the
trial court’s conclusion even if it would have held differently.[12]  In an abuse of discretion review, “[c]lose
calls must go to the trial court.”[13]  Thus, trial courts are given wide latitude in
their rulings on the reliability of expert testimony.[14] 

II.      Expert
Reliability 

To be admissible,
an expert must be qualified and the testimony must be relevant and reliable.[15]  The challenge to the expert in this
case concerns the reliability of his opinions. 
A court cannot simply accept expert testimony at face-value because
unreliable expert testimony constitutes no evidence.[16]  The
trial court should “undertake a rigorous
examination” of the three components of the reliability inquiry[17]—namely,
the expert’s methodology, foundational data, and whether too great an
analytical gap exists as the expert connects the foundational data or
methodology with the opinion.[18]  Each material part of an expert’s theory must
be reliable.[19]  Stated differently, “the expert’s testimony
must be reliable at each and every step or else it is inadmissible.”[20]  

There are limits to the
trial court’s rigorous examination. 
Courts may not second-guess the correctness of the expert’s conclusions;
they are only to examine whether the analysis used to reach those conclusions
is reliable.[21]  A court’s gate-keeping analysis is also not a
substitute for cross-examination.[22]  A
court is not permitted to determine reliability based on the weight of the
evidence or the credibility of the witnesses.[23]


Upon
objection, the proponent of the expert opinion must prove the reliability of
each opinion by a preponderance of the evidence.[24]  The proponent bears this burden “regardless
of the quality or quantity of the opposing party’s evidence on the issue and
regardless of whether the opposing party attempts to conclusively prove the
expert testimony is wrong.”[25]  Part of the burden of proof is ensuring that
the expert’s testimony contains no internal inconsistencies.[26]

III.    Dr. Barhorst’s
Reliability

We will uphold
the trial court’s exclusion of Dr. Barhorst’s testimony if a legitimate basis
for the ruling existed.[27]  Dr. Shanti’s motion to exclude challenged
whether the basis of Dr. Barhorst’s opinion was reliable given the conflict
between his original understanding of when Wilson’s pain commenced and Wilson’s
deposition testimony.  Dr. Barhorst listed
the bases for his causation opinion as a patient interview, a review of Wilson’s medical records featuring EMG tests
showing nerve damage, and a lack of evidence of fluoroscopy.  We
address each basis of Dr. Barhorst’s opinion in turn. 

If an expert bases his opinion upon
unreliable foundational data, any opinion drawn from that data is unreliable
and no evidence.[28]  Likewise, when an expert bases an opinion on
facts that vary materially from the actual facts, the opinion is unreliable and
no evidence.[29]  Although Dr. Barhorst cites multiple bases, at his deposition he emphasized Wilson’s statements on the
timing of her right-leg pain as the foundation for his causation opinion.  Dr. Barhorst opined that Dr. Shanti
injured Wilson’s nerve root during the third set of injections.  He stated the basis of his opinion as follows:

On the fact that the patient presented with no right
leg radicular symptoms by report to me and the fact that Dr. Reuben, after Dr.
Shanti’s involvement, clearly documents bilateral radicular complaints and the
fact that she’d never had right leg pain until she was injured—or immediately
after the ablative [third] procedure on the right side.  

 

Twice during his deposition, Dr.
Barhorst confirmed that, “a big part of the basis of [his] opinion that Dr.
Shanti injured her nerve root during the [third set of injections] is the fact
that [Wilson] told [him] she woke up and had right-sided leg pain after that
procedure.”  

Wilson
characterizes Dr. Barhorst’s reliance on his recollection of her interview as a
mistake, but Dr. Barhorst repeatedly discussed the timing of her pain as a
primary basis for his opinion.  His
supplemental report attempted to correct the inconsistency in the basis for his
causation opinion by calling the third set of injections the “most
proximate cause” of Wilson’s injury.  Dr.
Barhorst never stated, however, a basis for his conclusion that the third set
of injections was “the most proximate cause.” 
Dr. Barhorst also never explained why his opinion was reliable even
though a “big part” of the data forming the basis for his opinion changed.  

Wilson contends the trial court’s
exclusion of Dr. Barhorst’s causation opinion constitutes an improper credibility
determination.  She cites LMC Complete Automotive, Inc. v. Burke
for the proposition that the credibility of patient history and the general
weakness of facts in support of an expert’s opinion go to the weight of the
expert’s opinion, not the admissibility.[30]  In LMC,
a treating-physician expert formed a causation opinion based on a myelogram
x-ray taken after the accident in question and the patient’s statement that his
pain started after the accident.  Patient
history may be part of a reliable basis for a treating-physician’s causation
opinion.[31]  But Dr. Barhorst failed to explain why his
causation opinion remained the same even when a substantial basis for his
opinion had changed.  The reliability
inquiry here does not depend on Wilson’s credibility as to her medical history,
but on Dr. Barhorst’s failure to provide a reliable explanation for the basis
of his opinion.  

Dr. Barhorst’s failure to explain why
this change in a “big part” of the basis of his opinion did not alter his
opinion demonstrates a legitimate basis for the trial court’s finding that his
opinion was unreliable.[32]  Wilson had the burden to present evidence as
to why the third set of injections was “the most proximate cause” of her right
leg pain.  Considering Dr. Barhorst’s
emphasis in his deposition on his understanding of Wilson’s medical history and
his failure to explain why the third set of injections constituted the most
proximate cause of her injury, the trial court was within its discretion to
find the foundation of Dr. Barhorst’s causation opinion unreliable.[33]  

Dr. Barhorst also relied on the nerve damage shown
by comparing EMG tests.  Nothing in the
record indicates an EMG was performed between the second and third set of
injections.  Dr. Barhorst did not explain
why the EMGs isolated the third set of injections as “the most proximate cause”
of Wilson’s nerve damage rather than the first or second sets of injections or
a degenerative condition.  Thus, Dr.
Barhorst failed to link the data from the EMG to his causation opinion and his
bald assurances are not enough.[34]  The trial court was within its discretion to
find Dr. Barhorst’s reliance on the EMGs lacked the explanation and specificity
to make it a reliable basis for his causation opinion.

In
his supplemental report, Dr. Barhorst asserted that Dr. Shanti performed the
third set of injections without fluoroscopy and that this conduct constituted
gross negligence.  Wilson raised the
fluoroscopy issue before the trial court in terms of standard of care, not
causation.  Dr. Barhorst did not link
this standard of care opinion to his causation conclusion that the third set of
injections caused Wilson’s right leg pain. 
Wilson, therefore, cannot claim on appeal that the lack of fluoroscopy
provided a basis for Dr. Barhorst’s causation opinion.[35]

After
considering the foundational data in support of Dr. Barhorst’s causation
opinion, we cannot say the trial court’s ruling was arbitrary, unreasonable, or
made without reference to guiding rules or legal principles.  Therefore, the trial court did not abuse its
discretion by excluding Dr. Barhorst’s testimony with regard to the cause of
Wilson’s right-side pain.  

We
overrule Wilson’s first and second issues. 


Summary Judgment Without
Causation

Dr. Shanti filed traditional and
no-evidence motions for summary judgment after the trial court excluded Dr.
Barhorst’s testimony.  A trial court must
grant a traditional motion for summary judgment if there is no genuine issue as
to any material fact and the moving party is entitled to judgment as a matter
of law on the issues expressly set out in the motion.[36]  A court must grant a no-evidence motion for
summary judgment if: (1) the moving party asserts that there is no evidence of
one or more specified elements of a claim or defense on which the adverse party
would have the burden of proof at trial; and (2) the respondent produces no
summary judgment evidence raising a genuine issue of material fact on those
elements.[37]  

We
found no error in the exclusion of Dr. Barhorst’s testimony as to the cause of
Wilson’s right-side pain.  In a medical
malpractice cause of action, breach of the standard of care and proximate cause
must be established through expert testimony.[38]  In her summary
judgment response, Wilson admitted she had no evidence to rebut Dr. Shanti’s
motion following the exclusion of her expert witness.  She also asserted at the exclusion hearing
that she had no case without her expert. 
Wilson has no expert testimony on causation and therefore no evidence of
an element to which she bears the burden of proof at trial.

Nevertheless,
Wilson contends the testimony of Dr. Shanti’s own expert, Dr. Esses, raised a
fact issue as to causation.  Wilson did
not raise this ground for defeating summary judgment in the trial court.  A ground for defeating a summary judgment
motion cannot be raised for the first time on appeal.[39]  Accordingly, we will not consider whether Dr.
Esses’s testimony raises a fact issue.

We
overrule Wilson’s third and fourth issues.

Motion for New Trial

In
her fifth issue, Wilson contends the trial court erred by overruling her motion
for new trial.  Although Wilson complains
of this alleged error in her issues presented and summary of the arguments, she
asserts no case law or arguments in support of her contention.  Consequently, Wilson failed to brief this
issue adequately and error, if any, on this ground is waived.[40]




 

Conclusion

          We
hold the trial court did not abuse its discretion in excluding Dr. Barhorst’s
testimony or err in granting summary judgment. 
We therefore affirm the judgment of the trial court.  

 

 

 

                                                          Harvey
Brown                                                                                                     Justice 

 

Panel consists of Chief Justice Radack, Justice Massengale,
and Justice Brown.











[1]           An EMG
test reveals nerve damage through nerve responsiveness.  

 





[2]           The
expert reports in this case indicate the initial EMG was performed before Dr.
Shanti’s second procedure and may have been performed before all of Dr.
Shanti’s treatments.  





[3]           Fluoroscopy
is an imaging technique to ensure correct placement of the needle. 





[4]           See E.I. du Pont
de Nemours & Co. v. Robinson, 923
S.W.2d 549, 557 (Tex. 1995).

 





[5]           See Gammill v.
Jack Williams Chevrolet, Inc., 972 S.W.2d
713, 726 (Tex. 1998).





 

[6]           See Merrell Dow
Pharm., Inc. v. Havner, 953 S.W.2d 706,
713–15 (Tex. 1997).





[7]           Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 578 (Tex. 2006); Robinson, 923
S.W.2d at 558.

 





[8]           Gammill, 972 S.W.2d at 719.

 





[9]           Weingarten Realty Investors v. Harris Cnty.
Appraisal Dist., 93 S.W.3d 280, 283 (Tex. App.—Houston [14th Dist.] 2002,
no pet.) (citing Owens-Corning Fiberglas
Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998)).

 





[10]         Harris Cnty.
Appraisal Dist. v. Hartman Reit Operating P’ship, 186 S.W.3d 

155, 157 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

 





[11]         Id.

 





[12]         Lincoln v. Clark Freight Lines, Inc.,
285 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

 





[13]         Larson v. Downing, 197 S.W.3d 303, 304
(Tex. 2006) (per curiam).

 





[14]         Hartman Reit Operating, 186 S.W.3d at
157, 162.

 





[15]         TXI Transp. Co. v.
Hughes, 306 S.W.3d 230, 234 (Tex.
2010).

 





[16]         Exxon Corp. v. Makofski, 116 S.W.3d 176,
180 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

 





[17]          Mack
Trucks, 206 S.W.3d at
579.

 





[18]         See TXI Transp., 306 S.W.3d at 239 (discussing
first and third inquiry); Whirlpool Corp. v. Camacho, 298 S.W.3d 631, 637, 642 (Tex. 2009)
(noting that courts are to examine reliability of underlying data, methodology
or principles, and application to reach conclusions and that expert must connect
data relied to opinion and show how that data is valid support for opinion); Ford Motor Co. v Ledesma, 242 S.W.3d 32,
39 (Tex. 2007) (stating that expert testimony is unreliable if “it is based on
unreliable data or the expert draws conclusions from his underlying data ‘based
on flawed methodology’ or there is simply too great an analytical gap between
the data and the opinion offered”); Mack
Trucks, 206 S.W.3d at 579 (describing three-part reliability inquiry); see also Havner,
953 S.W.2d at 713–15 (referring to three parts of reliability inquiry).

 





[19]         Whirlpool, 298 S.W.3d at 637.

 





[20]         Knight v. Kirby Inland Marine, Inc., 482 F.3d 347,
355 (5th Cir. 2007).

 





[21]         TXI Transp., 306 S.W.3d at 239.

 





[22]         See Gammill, 972 S.W.2d at 728.

 





[23]         LMC
Complete Auto., Inc. v. Burke, 229 S.W.3d 469, 478–79 (Tex. App.—Houston
[1st Dist.] 2007, pet. denied) (finding weakness of facts in support of
expert’s opinion and credibility of patient history go to weight and not
admissibility); N. Dallas Diagnostic Ctr. v. Dewberry, 900 S.W.2d 90, 95
(Tex. App.—Dallas 1995, writ denied) (holding only the jury should determine
credibility and weight to be attached to expert’s testimony).

 





[24]         Mack Trucks, 206 S.W.3d at 578; Guadalupe-Blanco River Auth. v. Kraft,
77 

S.W.3d 805, 807 (Tex. 2002); see
Robinson, 923 S.W.2d at 549, 559.





[25]         Whirlpool, 298 S.W.3d at 639.

 





[26]         See Gen. Motors Corp. v. Iracheta, 161
S.W.3d 462, 470–72 (Tex. 2005).

 





[27]         See Weingarten Realty Investors, 93
S.W.3d at 283.

 





[28]         Havner, 953 S.W.2d at 714.





[29]         Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995).  





[30]         LMC Complete Auto., 229 S.W.3d at
478–79.

 





[31]         Id. at 479.





[32]         See Mack Trucks, 206 S.W.3d at 578; Guadalupe-Blanco
River Auth., 77 S.W.3d at 806.

 





[33]         Havner, 953 S.W.2d at 714.

 





[34]         Id. at 712.





[35]         See Tex.
R. App. P. 33.1(a)(1); see also
Regan v. Schlumberger Tech. Corp., No. 01-00-00026-CV, 2001 WL 1344077, at
*1-2 (Tex. App.—Houston [1st Dist.] Nov. 1, 2001, pet. denied.) (noting
appellant waives grounds on appeal challenging trial court’s exclusion of expert
testimony when those grounds were not raised at trial court).  





[36]         See
Tex. R. Civ. P. 166a(c); Lockett v. HB Zachry Co., 285 S.W.3d 63,
67 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

 





[37]         See
Tex. R. Civ. P. 166a(i); Lockett, 285 S.W.3d at 67.

 





[38]         Ocomen v. Rubio, 24 S.W.3d 461, 466
(Tex. App.—Houston [1st Dist.] 2000, no pet.).





[39]         See Tex.
R. Civ. P. 166a(c) (“Issues not expressly presented to the trial court
by written motion, answer or other response shall not be considered on appeal
as grounds for reversal.”); see also Via Net
v. TIG Ins. Co., 211 S.W.3d 310, 313 (Tex. 2006).  

 





[40]         See Tex.
R. App. P. 38.1; see also Stephens
v. Dolcefino, 126 S.W.3d 120, 129 (Tex. App.—Houston [1st Dist.] 2003), pet. denied, 181 S.W.3d 741 (Tex.
2005).