Kimberly WILSON, Appellant,

v.

Ihsan SHANTI, M.D. and Shanti
Pain and Wellness Clinic,
P.A., Appellees.

No. 01–09–00707–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 6, 2011.

Michael R. McGown, Benckenstein, Norvell & Nathan, L.L.P., Ryan W. Gertz, The Gertz Adair Law Firm, Beaumont, TX, for Appellant.

Samuel A. Houston, Shepherd, Scott, Clawater & Houston, L.L.P., Houston, TX, for Appellees.

Panel consists of Chief Justice RADACK, Justice MASSENGALE, and Justice BROWN.

## OPINION

HARVEY BROWN, Justice.

Kimberly Wilson filed a medical malpractice action against Dr. Ihsan Shanti and the Shanti Pain and Wellness Clinic, P.A. The trial court excluded the testimony of Wilson's expert and subsequently granted summary judgment to Dr. Shanti. In five issues, Wilson contends the trial court erred by (1) excluding her expert's testimony as unreliable; (2) granting summary judgment when she raised a disputed fact issue; and (3) allowing her motion for new trial to be overruled by operation of law. We affirm the judgment of the trial court.

### Background

Dr. Shanti treated Wilson for pain in her lower back and left leg. Dr. Shanti performed three sets of injections to treat her

pain: (1) a facet joint injection, (2) a median joint block, and (3) a radiofrequency thermal coagulation procedure (RFTC). For each type of injection, Wilson first received an injection on her right side and then returned a few days later for an injection on her left side.

Even though the treatment was for her left side, Wilson began to experience pain on her right side between the second and third sets of injections. Her pain on both sides intensified after the RFTC injections. Comparison of electromyogram (EMG) tests[1] before and after treatment demonstrated nerve root damage not present before Dr. Shanti's injections.[2] Wilson filed suit against Dr. Shanti and his clinic for damaging her nerve root through improper administration of the injections. More specifically, Wilson asserts the RFTC—the third set of injections designed to burn the nerve and thereby alleviate pain—caused her nerve root damage and was conducted without fluoroscopy.[3]

Wilson attached a report by Dr. Mark Barhorst to her original petition and designated him as her only expert. Dr. Barhorst's report stated that he interviewed Wilson, performed a physical exam, and reviewed her medical records. In Dr. Barhorst's opinion, Dr. Shanti's treatment fell below the standard of care, and the third set of injections caused increased pain to Wilson's left side and introduced pain to her right side. His report stated that Wilson "distinctly recall[ed] right leg pain beginning as a symptom immediately following [the third set of injections]."

Dr. Barhorst gave a deposition in which he confirmed that his report was complete and accurate. He testified that his causation opinion was based, in large part, on Wilson telling him her pain started after the third set of injections. He also stated that his opinion would "not necessarily" be wrong if Wilson's pain had started before the third set of injections. He offered no explanation during the deposition, however, for how he could reach the same conclusion if this significant factual basis for his opinion changed. At her deposition, Wilson testified that her right-side pain started between the second and third sets of injections and intensified after the third. Thus, her testimony contradicted Dr. Barhorst's testimony concerning the commencement of her pain.

Dr. Shanti filed a motion to exclude Dr. Barhorst's causation opinion as unreliable. He invoked the well-established *Robinson* factors for examining the methodology used by the expert[4] and the *Gammill* requirement that the expert link his conclusions to the data or facts.[5] He relied on the *Havner* requirement that the expert cannot base his opinion on unreliable data.[6] More specifically, he asserted Dr. Barhorst's opinion was based on an erroneous understanding that Wilson's right-side

1. An EMG test reveals nerve damage through nerve responsiveness.

2. The expert reports in this case indicate the initial EMG was performed before Dr. Shanti's second procedure and may have been performed before all of Dr. Shanti's treatments.

3. Fluoroscopy is an imaging technique to ensure correct placement of the needle.

4. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 557 (Tex.1995).

5. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 726 (Tex.1998).

6. *See Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 713–15 (Tex.1997).

pain started after the third set· of injections.

In response, Dr. Barhorst prepared a supplemental report that purported to correct the inconsistency between the facts he had stated as the basis for his opinion and the facts as related by Wilson in her deposition. In his supplemental report, Dr. Barhorst acknowledged Wilson's deposition testimony and asserted he based his original report and deposition testimony on an inaccurate memory of his conversation with Wilson. A review of his notes refreshed his recollection that her right-side pain began after the second set of injections, i.e. the medial block. Dr. Barhorst stated that these revised facts did not alter his conclusion, but he did not explain why. He stated that the second set of injections may have been a proximate cause of her right-side pain, but the third set of injections constituted "the *most* proximate cause" of her nerve damage.

After a hearing, the trial court granted the motion and excluded testimony by Dr. Barhorst relating to Wilson's right-side pain. Dr. Shanti then filed a motion for summary judgment. He attached a letter signed by the attorneys for both parties agreeing that no additional experts or opinions should be considered and that Wilson would replead to limit her damages to the right-side leg pain. Dr. Shanti also attached deposition testimony from Dr. Stephen Esses, one of Wilson's former treating physicians, who testified he saw

no reason to believe the injections caused Wilson's injury. Instead, Dr. Esses identified the cause of Wilson's pain as a progressive narrowing of the canal where the nerves exit her spine. In her response, Wilson filed a motion to reconsider the motion to exclude Dr. Barhorst's testimony and admitted that she had no evidence on causation without his opinion. The trial court granted summary judgment.

Wilson timely filed a motion for new trial which was overruled by operation of law.

## Reliability of Expert Testimony

Wilson contends the trial court abused its discretion by granting Dr. Shanti's motion to exclude Dr. Barhorst's testimony on the cause of her right-leg pain.

## I. Standard of Review

■■■ We review a trial court's ruling on the reliability of expert testimony for an abuse of discretion.[7] Under this standard, the trial court has broad discretion in deciding whether to admit or exclude expert testimony.[8] We will uphold a trial court's evidentiary ruling excluding expert testimony if a legitimate basis for the ruling exists.[9] We reverse only if the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles.[10] An abuse of discretion is not demonstrated by a mere error in judg-

7. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex.2006); *Robinson*, 923 S.W.2d at 558.

8. *Gammill*, 972 S.W.2d at 719.

9. *Weingarten Realty Investors v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 280, 283 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing

*Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex.1998)).

10. *Harris Cnty. Appraisal Dist. v. Hartman Reit Operating P'ship*, 186 S.W.3d 155, 157 (Tex.App.-Houston [1st Dist.] 2006, no pet.).

ment.[11] Neither will an appellate court reverse the trial court's conclusion even if it would have held differently.[12] In an abuse of discretion review, "[c]lose calls must go to the trial court."[13] Thus, trial courts are given wide latitude in their rulings on the reliability of expert testimony.[14]

## II. Expert Reliability

■■■■ To be admissible, an expert must be qualified and the testimony must be relevant and reliable.[15] The challenge to the expert in this case concerns the reliability of his opinions. A court cannot simply accept expert testimony at face-value because unreliable expert testimony constitutes no evidence.[16] The trial court should "undertake a rigorous examination" of the three components of the reliability inquiry[17]—namely, the expert's methodology, foundational data, and whether too great an analytical gap exists as the expert connects the foundational data or methodology with the opinion.[18] Each material part of an expert's theory must be reliable.[19] Stated differently, "the expert's testimony must be reliable at each and every step or else it is inadmissible."[20]

■■■■ There are limits to the trial court's rigorous examination. Courts may not second-guess the correctness of the expert's conclusions; they are only to examine whether the analysis used to reach those conclusions is reliable.[21] A court's gate-keeping analysis is also not a substitute for cross-examination.[22] A court is not permitted to determine reliability based on the weight of the evidence or the credibility of the witnesses.[23]

11. *Id.*

12. *Lincoln v. Clark Freight Lines, Inc.*, 285 S.W.3d 79, 84 (Tex.App.-Houston [1st Dist.] 2009, no pet.).

13. *Larson v. Downing*, 197 S.W.3d 303, 304 (Tex.2006) (per curiam).

14. *Hartman Reit Operating*, 186 S.W.3d at 157, 162.

15. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex.2010).

16. *Exxon Corp. v. Makofski*, 116 S.W.3d 176, 180 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).

17. *Mack Trucks*, 206 S.W.3d at 579.

18. *See TXI Transp.*, 306 S.W.3d at 239 (discussing first and third inquiry); *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637, 642 (Tex.2009) (noting that courts are to examine reliability of underlying data, methodology or principles, and application to reach conclusions and that expert must connect data relied to opinion and show how that data is valid support for opinion); *Ford Motor Co. v. Ledes-*

ma, 242 S.W.3d 32, 39 (Tex.2007) (stating that expert testimony is unreliable if "it is based on unreliable data or the expert draws conclusions from his underlying data 'based on flawed methodology' or there is simply too great an analytical gap between the data and the opinion offered"); *Mack Trucks*, 206 S.W.3d at 579 (describing three-part reliability inquiry); *see also Havner*, 953 S.W.2d at 713–15 (referring to three parts of reliability inquiry).

19. *Whirlpool*, 298 S.W.3d at 637.

20. *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir.2007).

21. *TXI Transp.*, 306 S.W.3d at 239.

22. *See Gammill*, 972 S.W.2d at 728.

23. *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 478–79 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (finding weakness of facts in support of expert's opinion and credibility of patient history go to weight and not admissibility); *N. Dallas Diagnostic Ctr. v. Dewberry*, 900 S.W.2d 90, 95 (Tex.App.-Dallas 1995, writ denied) (holding only the jury should determine credibility and weight to be attached to expert's testimony).

■ Upon objection, the proponent of the expert opinion must prove the reliability of each opinion by a preponderance of the evidence.[24] The proponent bears this burden "regardless of the quality or quantity of the opposing party's evidence on the issue and regardless of whether the opposing party attempts to conclusively prove the expert testimony is wrong."[25] Part of the burden of proof is ensuring that the expert's testimony contains no internal inconsistencies.[26]

### III. Dr. Barhorst's Reliability

■ We will uphold the trial court's exclusion of Dr. Barhorst's testimony if a legitimate basis for the ruling existed.[27] Dr. Shanti's motion to exclude challenged whether the basis of Dr. Barhorst's opinion was reliable given the conflict between his original understanding of when Wilson's pain commenced and Wilson's deposition testimony. Dr. Barhorst listed the bases for his causation opinion as a patient interview, a review of Wilson's medical records featuring EMG tests showing nerve damage, and a lack of evidence of fluoroscopy. We address each basis of Dr. Barhorst's opinion in turn.

■ If an expert bases his opinion upon unreliable foundational data, any opinion drawn from that data is unreliable and no evidence.[28] Likewise, when an expert bases an opinion on facts that vary materially from the actual facts, the opinion is unreli-

able and no evidence.[29] Although Dr. Barhorst cites multiple bases, at his deposition he emphasized Wilson's statements on the timing of her right-leg pain as the foundation for his causation opinion. Dr. Barhorst opined that Dr. Shanti injured Wilson's nerve root during the third set of injections. He stated the basis of his opinion as follows:

> On the fact that the patient presented with no right leg radicular symptoms by report to me and the fact that Dr. Reuben, after Dr. Shanti's involvement, clearly documents bilateral radicular complaints and the fact that she'd never had right leg pain until she was injured—or immediately after the ablative [third] procedure on the right side.

Twice during his deposition, Dr. Barhorst confirmed that, "a big part of the basis of [his] opinion that Dr. Shanti injured her nerve root during the [third set of injections] is the fact that [Wilson] told [him] she woke up and had right-sided leg pain after that procedure."

Wilson characterizes Dr. Barhorst's reliance on his recollection of her interview as a mistake, but Dr. Barhorst repeatedly discussed the timing of her pain as a primary basis for his opinion. His supplemental report attempted to correct the inconsistency in the basis for his causation opinion by calling the third set of injections the "*most* proximate cause" of Wilson's injury. Dr. Barhorst never stated, however, a basis for his conclusion that the

24. *Mack Trucks,* 206 S.W.3d at 578; *Guadalupe–Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 807 (Tex.2002); *see Robinson,* 923 S.W.2d at 549, 559.

25. *Whirlpool,* 298 S.W.3d at 639.

26. *See Gen. Motors Corp. v. Iracheta,* 161 S.W.3d 462, 470–72 (Tex.2005).

27. *See Weingarten Realty Investors,* 93 S.W.3d at 283.

28. *Havner,* 953 S.W.2d at 714.

29. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995).

third set of injections was "the most proximate cause." Dr. Barhorst also never explained why his opinion was reliable even though a "big part" of the data forming the basis for his opinion changed.

Wilson contends the trial court's exclusion of Dr. Barhorst's causation opinion constitutes an improper credibility determination. She cites *LMC Complete Automotive, Inc. v. Burke* for the proposition that the credibility of patient history and the general weakness of facts in support of an expert's opinion go to the weight of the expert's opinion, not the admissibility.[30] In *LMC,* a treating-physician expert formed a causation opinion based on a myelogram x-ray taken after the accident in question and the patient's statement that his pain started after the accident. Patient history may be part of a reliable basis for a treating-physician's causation opinion.[31] But Dr. Barhorst failed to explain why his causation opinion remained the same even when a substantial basis for his opinion had changed. The reliability inquiry here does not depend on Wilson's credibility as to her medical history, but on Dr. Barhorst's failure to provide a reliable explanation for the basis of his opinion.

Dr. Barhorst's failure to explain why this change in a "big part" of the basis of his opinion did not alter his opinion demonstrates a legitimate basis for the trial court's finding that his opinion was unreliable.[32] Wilson had the burden to present evidence as to why the third set of injections was "the most proximate cause" of her right leg pain. Considering Dr. Bar-

horst's emphasis in his deposition on his understanding of Wilson's medical history and his failure to explain why the third set of injections constituted the most proximate cause of her injury, the trial court was within its discretion to find the foundation of Dr. Barhorst's causation opinion unreliable.[33]

Dr. Barhorst also relied on the nerve damage shown by comparing EMG tests. Nothing in the record indicates an EMG was performed between the second and third set of injections. Dr. Barhorst did not explain why the EMGs isolated the third set of injections as "the most proximate cause" of Wilson's nerve damage rather than the first or second sets of injections or a degenerative condition. Thus, Dr. Barhorst failed to link the data from the EMG to his causation opinion and his bald assurances are not enough.[34] The trial court was within its discretion to find Dr. Barhorst's reliance on the EMGs lacked the explanation and specificity to make it a reliable basis for his causation opinion.

In his supplemental report, Dr. Barhorst asserted that Dr. Shanti performed the third set of injections without fluoroscopy and that this conduct constituted gross negligence. Wilson raised the fluoroscopy issue before the trial court in terms of standard of care, not causation. Dr. Barhorst did not link this standard of care opinion to his causation conclusion that the third set of injections caused Wilson's right leg pain. Wilson, therefore, cannot claim on appeal that the lack of fluorosco-

30. *LMC Complete Auto.,* 229 S.W.3d at 478–79.

31. *Id.* at 479.

32. *See Mack Trucks,* 206 S.W.3d at 578; *Guadalupe–Blanco River Auth.,* 77 S.W.3d at 806.

33. *Havner,* 953 S.W.2d at 714.

34. *Id.* at 712.

py provided a basis for Dr. Barhorst's causation opinion.[35]

After considering the foundational data in support of Dr. Barhorst's causation opinion, we cannot say the trial court's ruling was arbitrary, unreasonable, or made without reference to guiding rules or legal principles. Therefore, the trial court did not abuse its discretion by excluding Dr. Barhorst's testimony with regard to the cause of Wilson's right-side pain.

We overrule Wilson's first and second issues.

## Summary Judgment Without Causation

■ ■ Dr. Shanti filed traditional and no-evidence motions for summary judgment after the trial court excluded Dr. Barhorst's testimony. A trial court must grant a traditional motion for summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion.[36] A court must grant a no-evidence motion for summary judgment if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial; and (2) the respondent produces no summary judgment evidence raising a gen-

uine issue of material fact on those elements.[37]

■ ■ We found no error in the exclusion of Dr. Barhorst's testimony as to the cause of Wilson's right-side pain. In a medical malpractice cause of action, breach of the standard of care and proximate cause must be established through expert testimony.[38] In her summary judgment response, Wilson admitted she had no evidence to rebut Dr. Shanti's motion following the exclusion of her expert witness. She also asserted at the exclusion hearing that she had no case without her expert. Wilson has no expert testimony on causation and therefore no evidence of an element to which she bears the burden of proof at trial.

Nevertheless, Wilson contends the testimony of Dr. Shanti's own expert, Dr. Esses, raised a fact issue as to causation. Wilson did not raise this ground for defeating summary judgment in the trial court. A ground for defeating a summary judgment motion cannot be raised for the first time on appeal.[39] Accordingly, we will not consider whether Dr. Esses's testimony raises a fact issue.

We overrule Wilson's third and fourth issues.

## Motion for New Trial

In her fifth issue, Wilson contends the trial court erred by overruling her motion

---

**35.** See Tex.R.App. P. 33.1(a)(1); see also Regan v. Schlumberger Tech. Corp., No. 01-00-00026-CV, 2001 WL 1344077, at *1–2 (Tex. App.-Houston [1st Dist.] Nov. 1, 2001, pet. denied.) (noting appellant waives grounds on appeal challenging trial court's exclusion of expert testimony when those grounds were not raised at trial court).

**36.** See Tex.R. Civ. P. 166a(c); Lockett v. HB Zachry Co., 285 S.W.3d 63, 67 (Tex.App.-Houston [1st Dist.] 2009, no pet.).

**37.** See Tex R. Civ. P. 166a(i); Lockett, 285 S.W.3d at 67.

**38.** Ocomen v. Rubio, 24 S.W.3d 461, 466 (Tex. App.-Houston [1st Dist.] 2000, no pet.).

**39.** See Tex.R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); see also Via Net v. TIG Ins. Co., 211 S.W.3d 310, 313 (Tex.2006).

for new trial. Although Wilson complains of this alleged error in her issues presented and summary of the arguments, she asserts no case law or arguments in support of her contention. Consequently, Wilson failed to brief this issue adequately and error, if any, on this ground is waived.[40]

### Conclusion

We hold the trial court did not abuse its discretion in excluding Dr. Barhorst's testimony or err in granting summary judgment. We therefore affirm the judgment of the trial court.

---

**40.** See TEX.R.APP. P. 38.1; see also Stephens v. Dolcefino, 126 S.W.3d 120, 129 (Tex.App.- Houston [1st Dist.] 2003), pet. denied, 181 S.W.3d 741 (Tex.2005).