**Affirmed and Opinion Filed August 15, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01727-CV

### CLUB VISTA DEVELOPMENT II, INC., Appellant
### V.
### ONCOR ELECTRIC DELIVERY COMPANY, LLC, Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-04417**

## MEMORANDUM OPINION
Before Justices Moseley, Bridges, and Francis
Opinion by Justice Bridges

Club Vista Development II, Inc. appeals the trial court's no-evidence motion for summary judgment entered in favor of Oncor. In seven issues, Club Vista argues the trial court erred in granting Oncor's no-evidence motion for summary judgment and abused its discretion in excluding certain expert testimony. We affirm the trial court's judgment.

In April 2010, Club Vista sued Oncor alleging Oncor "negligently maintained and operated unprotected electrical equipment" that emitted sparks and ignited a fire that damaged Club Vista's property on April 9, 2009. The fire damaged approximately 300-400 acres of property on the west side of Possum Kingdom Lake in Palo Pinto County. Club Vista asserted, among other things, claims for negligence, res ipsa loquitur, and nuisance. Specifically, Club Vista claimed Oncor failed to install protected electrical equipment, maintain its transmission

lines, or inspect its electrical equipment. In June 2010, Club Vista filed its first amended petition alleging the fire started in the immediate vicinity of a telephone pole that had been negligently maintained and operated with unprotected electrical equipment at the top of the pole mounted transformer. Club Vista alleged Oncor defectively designed its power lines. In April 2011, Club Vista filed its second amended petition[1] alleging there were high winds in the area on the day of the fire. Club Vista alleged the high winds caused a power outage on the "1148" line, and "a worker, Mark Morrison, was dispatched to investigate this outage. Morrison exited his truck and, "according to his testimony, observed a small fire." Club Vista alleged "the fire supposedly observed by Mr. Morrison was caused either by Oncor's electrical equipment in the area of the utility pole or by the actions of Mr. Morrison when he went to investigate the source of the outage." Club Vista asserted Morrison failed to exercise reasonable care when he failed to extinguish the fire. Club Vista added to its negligence claims assertions that Oncor failed to exercise reasonable care when its employees investigated the power outage and the fire was discovered. The second amended petition added claims under a premises liability theory and under the theory Morrison assumed a duty of reasonable care to extinguish the fire or report it to authorities after he saw it.

In August 2011, intervenor Travelers Lloyds of Texas Insurance Company filed its second amended petition alleging virtually identical facts and causes of action as Club Vista. Travelers set forth the following version of the facts: on April 9, 2009, the fire originated in the vicinity of a utility pole owned, operated, and maintained by Oncor. Initially, investigating authorities, including virtually all the fire departments and the Texas Forestry Service, identified the cause of this fire as being electrical lines. The only electric lines in the area where the fire started are Oncor lines that are on the subject utility pole. The fire marshal from Mineral Wells,

---

[1] In December 2010, Club Vista filed a pleading entitled second amended petition that was virtually identical to the first amended petition.

Berry Gill, had reportedly found a dead vulture near the electric line. The wildlife protection for the utility pole in question was also found on the ground close to the utility pole. Therefore, a possible cause of this fire was believed to be related to wildlife coming into contact with energized lines. Gill later stated he found no vulture.

However, Travelers further alleged Morrison saw a small fire "the size of a baseball or a softball" as he walked down a dirt road to examine Oncor's power line. After observing the fire, Morrison "simply continued down through the gate to inspect the rest of the line, stating that he would put the fire out when he came back." By the time Morrison came back, "the fire was a full-fledged conflagration," and Morrison could not get to his truck. Morrison had to "circle around, go to his truck, and he called 911 as he fled the scene." Travelers alleged Morrison "is a smoker" and caused the fire he saw based on the following factors: Morrison admitted the fire started when he was present at the scene; he was the only person there; he admitted he did not see any ignition sources at the point where the fire started; weather conditions "made it very susceptible to the fire being caused by a carelessly discarded cigarette;" he stated in his deposition that he does not smoke at work, but his supervisor testified he does smoke at work, he is not allowed to smoke in his Oncor truck, and he smokes when he gets out of his truck; the area where he said he saw the incipient fire is a short distance from where he parked his truck; the point where he says he saw the fire is also a point where he was likely to have attempted to dispose of or dropped a cigarette as he attempted to open a gate; his statement that he saw the fire start and decided to put it out later "strains credulity."

In February 2012, intervenor American National Lloyds Insurance Company (ANPAC) filed its petition in intervention in which it adopted all facts and causes of action pled by Club Vista and the other intervenors. In July 2012, Club Vista filed its seventh amended petition setting forth a version of the facts virtually identical to that asserted by Travelers and ANPAC.

–3–

In September 2012, Oncor filed a traditional and no-evidence motion for summary judgment that first summarized the history of the case as follows: Club Vista's first three petitions alleged the fire was caused by Oncor's negligent maintenance and operation of electrical equipment on a utility pole. Club Vista was forced to abandon that theory, however, when they learned that the equipment allegedly causing the fire was de-energized. Next, Club Vista alleged that the fire was caused in an unidentified manner by Morrison, who was in the area investigating the outage. Finally, Club Vista alleged the cause of the fire was careless smoking by Morrison. Oncor argued there was no evidence to support the supposition that Morrison caused the fire through careless smoking. Oncor argued Morrison testified he did not smoke on April 9, 2009; nobody saw him smoking; none of his colleagues have ever seen him smoke in the field; and nobody had ever found evidence of smoking at the scene, a heavily-treed area between the highway in a row of residences that is accessible by anyone. Noting that Club Vista also argued Oncor was liable for the fire because Morrison did not put it out or report it fast enough, Oncor argued Morrison had no duty to take any action with respect to a peril he did not cause.

Oncor's motion asserted, among other things, there was no evidence to support Club Vista's active negligence theory[2] because there was no evidence Morrison breached any duty of care or that such breach proximately caused the fire. Specifically, Oncor argued that, prior to the filing of this lawsuit, not one person – not a homeowner, firefighter, fire marshal, governmental authority, insurance company, or fire investigator – ever suggested the fire was started by a cigarette, despite multiple attempts to identify the cause. Oncor argued Club Vista based its entire careless smoking case on evidence that Morrison had smoked before, was the first to

---

[2] Club Vista does not challenge the trial court's summary judgment on its assumed duty/negligent undertaking, premises-control, or res ipsa loquitur claims. Accordingly, we do not further address these claims.

–4–

report a fire at the location in question, and said he did not notice anything in the area that could have caused the fire.

Oncor's motion was supported by affidavits and deposition testimony including the following: Karen Ridenour, a wildfire preparation specialist for the Texas Forest Service, testified within a sixteen hour period on April 9, 2009, there were 205 wildfires in twelve counties, including Palo Pinto County. Palo Pinto County Fire Marshal Gill testified "[t]hat day was real low humidity . . . And very high winds. So you know, it was a given that we was going to have a fire somewhere." Gill testified he had been investigating the causes and origins of fires for seven years. From Gill's investigation, he could not make a determination of the exact area of the origin of the fire and could only narrow down the area of origin to "within a quarter-mile area." As fire marshal for the county, Gill testified it was his "main concern" to determine if the fire "was a suspicious origin," but Gill "didn't see anything suspicious about it."

Morrison testified he received a call on April 9, 2009, about a power outage at Possum Kingdom Lake. The dispatcher called Morrison on his cell phone and told him that "we had a recloser out," which is a device that can open and close the power line. Another Oncor employee, Henry Freeze, called Morrison, and they agreed Freeze would stop at the recloser and Morrison would visually inspect the line. Morrison was driving east on 1148 but turned around where the line went off the road where Morrison could not see it. Morrison turned down Gentry Lane and pulled up to a gate where he parked his truck and got out to "walk down to look at the line." Morrison saw "just a little small smoldering fire underneath a cedar tree right at – on the corner of the gate under a pretty good sized cedar tree." Morrison saw "it smoking and just a small – little small flame." Morrison was going to put the fire out when he got back to his truck. At the location of the fire, "it was rocks, and it was underneath a cedar tree." There was "no way you could put the fire out without either crawling in there or using a fire extinguisher," and

Morrison "didn't think it was going to go nowhere with the rocks and the green tree." Morrison "could barely see the flame on" the smoldering underneath the tree, and there was "very little" smoke. Morrison thought it was "just a few leaves that had blew under that tree" that were burning. The size of the burning area was "between a baseball and softball." Morrison testified he did not try to put out the fire when he first discovered it because he "didn't think it was going to go anywhere because it's just – it was all rocks. The cedar tree – I didn't – I didn't think a green tree would burn. And there was just a – it was just a little bitty fire underneath there, and it was just covered in rocks. And – there wasn't nothing there that I thought would burn."

Morrison "proceeded to walk down to the – the line and do a visual inspection on the line." Morrison spent "no more than one or two minutes" checking the line. "And on the way back up to the – my truck, the cedar tree caught on fire." Morrison called Freeze and told him that a small fire had caught a cedar tree on fire and Morrison could not get to his truck because "the tree was between – right at the edge of the gate." Freeze told Morrison to leave the truck and get away from the fire, but Morrison "went down the fence line and crawled over the fence and got to [his] truck, called 911 as [he] was headed back up to 1148."

Morrison testified he is a smoker but was not smoking on the day of the fire. Morrison testified he does not smoke while working and "dip[s] snuff" instead. In an affidavit attached to Oncor's motion for summary judgment, Freeze stated he was asked at his deposition whether smoking is permitted in Oncor's trucks, and he responded "no." Freeze "presumed the question was asking whether smoking was permitted in Oncor trucks when [Freeze] was with Mr. Morrison." Freeze clarified that Oncor employees such as Morrison are permitted to smoke in Oncor trucks when the employees are alone, unless the trucks are designated non-smoking. This was the rule in 2009, and none of the trucks at the Oncor service center were designated non-smoking in 2009.

In October 2012, Club Vista filed a response to Oncor's motion for summary judgment supported by the affidavits, among others, of fire reconstruction experts Michael Klassen and Freeman Reisner and psychologist Antonio Cepeda-Benito.

Klassen is a mechanical engineer. Klassen states in his affidavit that, on the day of the fire, the winds were very strong from the southwest, and the fire observed by Morrison was in the Southwest portion of the quadrant. Klassen stated his opinion that Morrison observed the fire in that area and the fire then spread in a northerly and easterly direction. Based upon the small size of the fire Morrison observed, Klassen stated his opinion that the fire initiated after Morrison arrived and got out of his truck. Klassen stated the fire did not ignite spontaneously, and "the only possible explanations for what Mr. Morrison observed are that an act or omission of Mr. Morrison started the fire or that an ember from a preexisting fire to the west or southwest traveled to the point where Mr. Morrison first observed fire." Klassen stated no one had identified any fires to the west or southwest prior to Morrison observing this fire. Klassen noted Morrison did not state that he saw any other fires or that he saw an ember that would be sufficient to ignite this fire. Given that Morrison was the only person present, Klassen formed the opinion that "some act or omission of Mr. Morrison started the fire." Further, because Morrison is a smoker, he exited his truck shortly before he saw the fire, and the fire happened near a gate Morrison needed to open, it was Klassen's opinion that the most likely cause of the fire was "the careless disposal of a cigarette" by Morrison. Klassen's affidavit was supported by a report he generated on the cause of the fire. The report states it was based upon a December 14, 2011 visit to the scene of the fire. The report cited "reports that Mr. Morrison smoked on breaks during work hours," and specifically referenced Freeze's statement that he had previously seen Morrison exit his work truck to smoke a cigarette. The report cited GPS data showing

Morrison was present in the area for five to fifteen minutes, "ample time" for Morrison to smoke a cigarette after he exited his work truck.

Klassen testified this case was the first wildfire case or case involving smoking materials in which he had been designated as an expert. Klassen previously investigated a fire that started in the grass outside a house and transitioned from the grass to the house. When asked if it would affect his opinions if Morrison were not a smoker, Klassen answered, "If he wasn't a smoker, then – then you would be able to logically eliminate smoking as a cause."

Cepeda-Benito's affidavit states he is a psychologist who specializes in the study of addictive behaviors, and he prepared a report regarding Morrison's propensity to smoke after he exited his vehicle. Cepeda-Benito's report states it is based on the facts that (1) Morrison is a smoker; (2) Morrison and Freeze testified Morrison does not smoke inside the cabin of Oncor's trucks; (3) Freeze reported that Morrison smokes when he gets out of his truck; and (4) smoking is habit-forming and largely controlled by contextual cues: that is, through repeated practice, smokers learn routines that dictate when and where they smoke. The report states it is "more likely than not" that Morrison has developed the habit of smoking as soon as he leaves his truck. While working, he is deprived of smoking because he does not smoke inside the cabin of the truck. Through many practices or repeated occurrences, getting out of the truck has become a cue or signal that "reminds" him of smoking or that he has associated with smoking. Thus, the report concluded, it is more likely than not Morrison smoked on April 9 after he parked and got out of his truck.

Reisner is an electrical engineer. In deposition testimony, Reisner testified he visited the scene of the fire on May 5, 2009. Reisner was looking at the power line because "the only source for ignition at that point would have been the power line." He saw a utility pole that had

been cut and a bird guard lying on the ground. Reisner "thought maybe since the bird guard was down that the buzzards had gotten in there and maybe damaged the transformer."

In Reisner's affidavit attached to Club Vista's response, Reisner states he is a fire cause and origin expert. Reisner visited the scene of the fire "shortly after the fire occurred," and his observations led him to conclude that what Morrison saw was the beginning of the wildfire. Given that the area burned in the fire was to the north and east of where Morrison saw the small fire, Reisner opined it was not possible the fire started to the north or east of that point and then an ember blew back against the wind to start the fire. Reisner "conducted an experiment to determine whether a cigarette could ignite material such as those that would exist at the time." Based on those experiments, Reisner formed the opinion that "the fire could have easily been ignited by a carelessly disposed cigarette."

Reisner also generated a report describing the following laboratory test: "we collected juniper leaves and dead grass, dried the collected material, and piled it on a metal plate. We dropped a lit cigarette on the dried material, dropped some material over the smoldering end of the cigarette, and provided wind with a small battery-powered fan. After 3 to 4 minutes, the dried material ignited and flames arose." The report concluded that a "test with a lit cigarette in dried grass and juniper leaves"[3] showed it would take only about three or four minutes for a fire to ensue after the cigarette fell into the dried leaves. Reisner opined the probable cause of the fire was a discarded cigarette.

Oncor filed a motion to strike Club Vista's summary judgment evidence. Oncor set forth the "facts" cited in Cepeda-Benito's affidavit and argued three of his foundational facts were "undeniably wrong." Therefore, Oncor argued, the affidavit was inadmissible. Specifically,

---

[3] In its motion to strike Club Vista's summary judgment evidence, Oncor asserted "Reisner obtained a cookie sheet from his oven, grabbed some leaves from his backyard, literally bummed a cigarette (the brand of which he does not know) from a guy at a gas station, put two fans from the back of his computers up to the cookie pan, lit the cigarette, dropped it on the leaves, and then, when it would not light (as evidenced by a video that Plaintiffs leave out of the record), started dropping leaves on the lit end of the cigarette."

–9–

Oncor argued the evidence unequivocally establishes (1) Morrison can and does smoke in his Oncor truck; (2) Morrison does not smoke when exiting his truck while working, as he was on the day of the fire; and (3) Morrison did not have access to necessary smoking materials at the time in question. Citing *Merck & Co. v. Garza*, 347 S.W.3d 256, 262 (Tex. 2011), Oncor argued that, if the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable. Oncor cited Morrison's testimony in which he answered "yes" when asked "are you a smoker?" and testified he does not smoke while working. Oncor cited its own policy that would have prevented Morrison from smoking in his truck when Freeze was present but would permit Morrison or other employees to smoke in Oncor trucks when they were alone. Oncor argued there was too great an "analytical gap" between the data Cepeda-Benito relied on and his opinion. Finally, Oncor cited Morrison's testimony that he does not smoke while working and dips snuff instead to support its argument that Cepeda-Benito merely "assume[d] the critical fact that Morrison had necessary smoking materials with him at the time he exited his vehicle." Such speculation, Oncor argued, could not support a reliable and relevant opinion.

As to Reisner, Oncor challenged his status as a "fire cause and origin expert," arguing that investigating wildfires was not listed as one of his areas of consulting on his resume. Noting it was Club Vista's burden to prove Reisner's qualifications, Oncor argued his affidavit could be stricken for this reason alone. Oncor argued further that Reisner is an electrical engineer, and almost all of his training concerns electricity-caused, urban fires. Oncor cited Reisner's deposition testimony in which he could recall only five instances in which he had ever investigated a wildfire, and in every one of those situations the issue was whether power lines or their related facilities caused the fire.

Oncor further argued Reisner's affidavit and report should be stricken because they were unreliable, conclusory, and incontrovertible. Regarding Reisner's "experiment," Oncor argued Reisner did not identify any of the conditions under which the experiment was performed. Oncor asserted Reisner did not record any data in connection with the experiment, and even if he had he could not establish the test was reliable because he did not know the conditions under the tree where he believed the fire started.

Regarding Klassen's affidavit and report, Oncor argued nothing in his resume indicated he had any knowledge about the investigation of wildfires, the ecosystem around Possum Kingdom Lake, or the atmospheric sciences. All of Klassen's degrees are in mechanical engineering, and all of his work experience is related to combustion and machines, primarily turbines and smoke alarms. Oncor asserted Club Vista presented no evidence Klassen had any training or experience in fire cause and origin investigations.

Club Vista filed a response in which it characterized Oncor's motion for summary judgment as a series of Robinson motions to strike expert testimony. Club Vista moved for a continuance so that a separate hearing could be set and it could have an opportunity to respond. Oncor filed a reply in which it argued that, when responding to a no-evidence summary judgment motion, it is plaintiffs' burden to establish the qualifications and reliability of their experts' opinions in the first instance, i.e., in the response. Oncor argued a Robinson hearing was unnecessary and asked the trial court to strike Club Vista's summary judgment evidence and deny its request for continuance. Club Vista subsequently filed another response in which it contested Oncor's overestimation of the technical issues involved in determining the cause of the fire. Club Vista further defended its experts' methodologies and qualifications and attempted to discredit Oncor's arguments that other causes of the fire had not been reasonably ruled out. Club Vista, much as it had in its response to Oncor's motion for summary judgment, argued Reisner,

Klassen, and Cepeda-Benito were qualified experts who followed the scientific method to reach a conclusion about the fire's probable cause.

At the November 16, 2012 hearing on Oncor's motion for summary judgment, Club Vista presented, by deposition, evidence of the opinions of Reisner, Klassen, and Cepeda-Benito, among others.

Following the arguments of counsel, the trial judge stated he was going to grant the motion to strike as to Cepeda-Benito because he did not "think that the record provide[d] adequate data for [Cepeda-Benito] to reach the conclusions that he is trying to offer." As to the fire cause and origin experts, Reisner and Klassen, the trial judge stated it did not appear they had "any real experience with wildfires" or "undertook any meaningful effort to educate themselves." The trial judge was not satisfied that either Reisner or Klassen demonstrated a proper foundation for an opinion that either the fire was more probably than not caused by a cigarette or that Morrison was the smoker. The trial judge stated "there is a serious analytical gap here" and concluded Reisner's and Klassen's testimony was inadmissible. Having granted the motions to exclude the opinion testimony on causation, the trial judge also granted Oncor's motion for summary judgment. On November 30, 2012, the trial judge signed an order excluding, among other things, the testimony of Reisner, Klassen, and Cepeda-Benito and granting Oncor's no-evidence motion for summary judgment. This appeal followed.

We first address Club Vista's third, fourth, fifth, sixth, and seventh issues in which it argues the trial court abused its discretion in excluding its fire cause and origin testimony; finding an "analytical gap" in the experts' reasoning; insisting on a "smoking gun" piece of physical evidence, eyewitness testimony, or an admission by Morrison in order for the experts' opinions to be reliable; excluding Reisner's and Klassen's testimony in its entirety; and excluding the testimony of Cepeda-Benito.

–12–

We review a trial court's ruling on the reliability of expert testimony for an abuse of discretion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 578 (Tex. 2006). Under this standard, the trial court has broad discretion in deciding whether to admit or exclude expert's testimony. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998). We will uphold a trial court's evidentiary ruling excluding expert testimony if a legitimate basis for the ruling exists. *Weingarten Realty Investors v. Harris Cnty. Appraisal Dist.*, 93 S.W.3d 280. 283 (Tex. App.–Houston [14th Dist.] 2002, no pet). We reverse only if the trial court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Harris Cnty. Appraisal Dist. v. Hartman Reit Operating P'ship*, 186 S.W.3d 155, 157 (Tex. App.–Houston [1st Dist.] 2006, no pet). An abuse of discretion is not demonstrated by a mere error in judgment. *Id.* Nor will an appellate court reverse the trial court's conclusion even if it would have held differently. *Lincoln v. Clark Freight Lines, Inc.*, 285 S.W.3d 79, 84 (Tex. App.–Houston [1st Dist.] 2009, no pet). In an abuse of discretion review, "[c]lose calls must go to the trial court." *Larson v. Downing*, 197 S.W.3d 303, 304 (Tex. 2006) (per curiam). Thus, trial courts are given wide latitude in their rulings on the reliability of expert testimony. *Hartman Reit Operating*, 186 S.W.3d at 157, 162.

To be admissible, an expert must be qualified and the testimony must be relevant and reliable. *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 234 (Tex. 2010). The challenge to the experts in this case concerned the reliability of their opinions. A court cannot simply accept expert testimony at face value because unreliable expert testimony constitutes no evidence. *Exxon Corp. v. Makofski*, 116 S.W.3d 176, 180 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). The trial court should "undertake a rigorous examination" of the three components of the reliability inquiry - namely, the expert's methodology, foundational data, and whether too great an analytical gap exists as the expert connects the foundational data or methodology with

the opinion.  *See TXI*, 306 S.W.3d at 239; *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637, 642 (Tex. 2009) (courts are to examine reliability of underlying data, methodology or principles, and application to reach conclusions, and expert must connect data relied on to opinion and show how data is valid support for opinion); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 39 (Tex. 2007) (expert testimony is unreliable if "it is based on unreliable data or the expert draws conclusions from his underlying data 'based on flawed methodology' or there is simply too great an analytical gap between the data and the opinion offered").  Each material part of an expert's theory must be reliable.  *Whirlpool*, 298 S.W.3d at 637.  Stated differently, the expert's testimony must be reliable at each and every step or else it is inadmissible.  *Wilson v. Shanti*, 333 S.W.3d 909, 913 (Tex. App.–Houston [1st Dist.] 2011, pet. denied).  An expert's affidavit that is based on assumed facts that vary from the actual undisputed facts has no probative force. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995).

There are limits to the trial court's rigorous examination.  *Wilson*, 333 S.W.3d at 913. Courts may not second-guess the correctness of the expert's conclusions; they are only to examine whether the analysis used to reach those conclusions is reliable.  *TXI*, 306 S.W.3d at 239.  A court's gate-keeping analysis is also not a substitute for cross-examination.  *See Gammill*, 972 S.W.2d at 239.  A court is not permitted to determine reliability based on the weight of the evidence or the credibility of the witnesses.  *Wilson*, 333 S.W.3d at 913.

Upon objection, the proponent of the expert opinion must prove the reliability of each opinion by a preponderance of the evidence.  *Mack Trucks*, 206 S.W.3d at 578.  The proponent bears this burden "regardless of the quality or quantity of the opposing party's evidence on the issue and regardless of whether the opposing party attempts to conclusively prove the expert testimony is wrong."  *Whirlpool*, 298 S.W.3d at 639.  Part of the burden of proof is ensuring that the expert's testimony contains no internal inconsistencies.  *See Gen. Motors Corp. v. Iracheta*,

161 S.W.3d 462, 470-72 (Tex. 2005). The trial court is not required to conduct a *Robinson* hearing separate and apart from the summary judgment hearing to determine the admissibility of summary judgment evidence from an expert witness. *Rayon v. Energy Specialties, Inc.*, 121 S.W.3d 7, 19-20 (Tex. App.–Fort Worth 2002, no pet.). There is no difference between the standards for evidence that would be admissible in a summary judgment proceeding and those applicable at a regular trial. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997).

Here, neither Reisner nor Klassen had experience with wildfires like the one at issue. Klassen's opinion was that the most likely cause of the fire was "the careless disposal of a cigarette" by Morrison. Similarly, Reisner formed the opinion that "the fire could have easily been ignited by a carelessly disposed cigarette." Klassen based his opinion on "reports" that Morrison smoked on breaks during work hours. Reisner based his opinion on a "laboratory test" in which he dropped a lit cigarette on leaves on a "metal plate" with wind provided by "a small battery-powered fan." However, there is no evidence Morrison had a cigarette in his possession on the day of the fire or that he disposed of a cigarette at the scene of the fire. Reisner's and Klassen's opinions are based on assumed facts that vary from the actual undisputed facts. *See Crye*, 907 S.W.3d at 499. Under these circumstances, too great an analytical gap exists between the foundational data and methodology employed by Reisner and Klassen and their opinions. *See TXI*, 306 S.W.3d at 239. Accordingly, the court did not abuse its discretion in excluding their opinions. *See Mack Trucks*, 206 S.W.3d at 578.

In reaching this conclusion, we reject Club Vista's argument that the trial court insisted on a "smoking gun" piece of physical evidence, eyewitness testimony, or an admission by Morrison in order for Reisner and Klassen's testimony to be reliable. On the contrary, there was no physical evidence to establish the reliability of their testimony, which amounted to

conjectural, conclusory opinions based on the fact that Morrison was a smoker. Further, exclusion of their testimony in its entirety was warranted under these circumstances.

As to the testimony of Cepeda-Benito, Club Vista argues his testimony was admissible as evidence of habit. However, his testimony was based on the assumptions that Morrison does not smoke in his work truck and smokes when he gets out of his work truck. Therefore, Cepeda-Benito determined, Morrison has formed a habit of smoking as soon as he leaves his truck. However, this opinion is based on assumed facts that vary from the actual undisputed facts. *See Crye*, 907 S.W.3d at 499. The undisputed facts show Morrison is a smoker who does not smoke while working and dips snuff instead. In addition, Morrison is not prohibited from smoking when he is alone in his work truck, as he was on the day of the fire. There is no evidence Morrison was in possession of any smoking materials or cigarettes on the day of the fire. Under these circumstances, the trial court did not abuse its discretion in excluding Cepeda-Benito's expert testimony. *See Mack Trucks*, 206 S.W.3d at 578. We overrule Club Vista's third, fourth, fifth, sixth, and seventh issues.

In its first issue, Club Vista argues the trial court erred in granting Oncor's no-evidence motion for summary judgment. Specifically, Club Vista argues there is evidence Morrison was the only person present when the fire started, the circumstances indicate that it was likely Morrison smoked at the location of the fire, the fire started at a point where it would be expected that Morrison would dispose of a cigarette, the conditions were ripe for a cigarette fire, all other causes have been reasonably ruled out, and Morrison has provided inconsistent and implausible testimony regarding what he saw and what he did. In its second issue, Club Vista argues the summary judgment was improper in light of the interested witness rule.

A party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the

burden of proof at trial. TEX. R. CIV. P. 166a(i). Assuming such a motion otherwise complies with the rule, it must be granted unless the non-movant produces summary judgment evidence raising a genuine issue of material fact as to the contested element or elements. *Id.*; *see W. Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

We review de novo a summary judgment granted on either no-evidence or traditional grounds, examining the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam). We cannot affirm a summary judgment on grounds other than those specified in the motion. TEX. R. CIV. P. 166a(c); 166a(i). However, if the trial court's order does not specify the grounds on which it granted summary judgment, we affirm if any of the grounds specified in the motion are meritorious. *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

We affirm a no-evidence summary judgment if, as to an essential element of the claim or defense identified in the motion: (a) there is a complete absence of evidence; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered; (c) the evidence offered is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Thus, to avoid a no-evidence summary judgment, the non-moving party must bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to the element or elements attacked. *Id.* More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* On the other hand, the evidence amounts to no more than a scintilla if it is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id.*

Here, Club Vista presented summary judgment evidence that established Morrison is a smoker who saw a small fire under a cedar tree on the day of the fire. However, as we have discussed, there is no evidence Morrison was in possession of any smoking materials or cigarettes on the day of the fire. Club Vista produced no evidence Morrison was the cause of the fire at issue, whether by discarding a cigarette or some other act. *See Chubb Lloyds Ins. Co. v. H.C.B. Mech.*, 190 S.W.3d 89, 94-95 (Tex. App.–Houston [1st Dist.] 2005, no pet.) (no evidence cigarette discarded carelessly or accidentally by employee proximately caused fire at residence even though employee testified he was a smoker and smoked at residence on day of fire); *Systech Fin. Corp. v. Vaughn*, 558 S.W.3d 105, 106 (Tex. Civ. App.–Tyler 1977, no writ) (instructed verdict for tenant proper on landlord's negligent use of smoking materials claim in connection with apartment fire even though evidence showed tenant was a smoker and "spent very little time during the morning in question near the sofa where the fire originated;" evidence it was possible tenant caused fire could not be accepted as evidence he did so). We have reviewed the record and conclude the trial court did not err in entering a no-evidence summary judgment in favor of Oncor. *See id.*

Club Vista argues summary judgment was improper because of the interested witness rule, which states "the testimony of an interested witness is sufficient to raise a fact issue." *Tabor v. Med. Ctr. Bank*, 534 S.W.2d 199, 201 (Tex. App.–Houston [14th Dist.] 1976, no writ). However, this was a no-evidence summary judgment, and Oncor did not rely on Morrison's testimony. Instead, the issue was whether Club Vista brought forward more than a scintilla of evidence as to the elements of its claims Oncor attacked. *Chapman*, 118 S.W.3d at 751. We have concluded Club Vista did not meet this burden. Morrison's testimony was not relevant to the determination of whether Club Vista met its burden. We overrule Club Vista's first and second issues.

We affirm the trial court's judgment.

/David L. Bridges/

121727F.P05        DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CLUB VISTA DEVELOPMENT II, INC.,
Appellant

No. 05-12-01727-CV          V.

ONCOR ELECTRIC DELIVERY
COMPANY, LLC, Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-04417.
Opinion delivered by Justice Bridges.
Justices Moseley and Francis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee ONCOR ELECTRIC DELIVERY COMPANY, LLC recover its costs of this appeal from appellant CLUB VISTA DEVELOPMENT II, INC..

Judgment entered this 15th day of August, 2014.